IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 38191/38192/38193

| | | |
|---|---|---|
| IN THE MATTER OF DISTRIBUTION OF WATER TO VARIOUS WATER RIGHTS HELD BY OR FOR THE BENEFIT OF A&B IRRIGATION DISTRICT, AMERICAN FALLS RESERVOIR DISTRICT #2, BURLEY IRRIGATION DISTRICT, MILNER IRRIGATION DISTRICT, MINIDOKA IRRIGATION DISTRICT, NORTH SIDE CANAL COMPANY, AND TWIN FALLS CANAL COMPANY. | ) ) ) ) ) ) ) ) ) ) | Boise, June 2012 Term<br><br>2013 Opinion No. 134<br><br>Filed: December 17, 2013 |
| ------------------------------------------------------- | ) | Stephen Kenyon, Clerk |
| A&B IRRIGATION, AMERICAN FALLS RESERVOIR DISTRICT #2, BURLEY IRRIGATION DISTRICT, MILNER IRRIGATION DISTRICT, MINIDOKA IRRIGATION DISTRICT, NORTH SIDE CANAL COMPANY, TWIN FALLS CANAL COMPANY | ) ) ) ) ) ) ) | |
| Petitioners-Appellants, | ) ) | |
| and | ) ) | |
| UNITED STATES OF AMERICA, BUREAU OF RECLAMATION, | ) ) ) | |
| Petitioners-Respondents on Appeal, | ) ) | |
| v. | ) ) | |
| GARY SPACKMAN, in his capacity as Interim Director of the Idaho Department of Water Resources, and the IDAHO DEPARTMENT OF WATER RESOURCES, | ) ) ) ) ) | |
| Respondents-Respondents on Appeal, | ) ) | |
| and | ) ) | |
| IDAHO GROUND WATER APPROPRIATORS, INC., | ) ) ) | |

| **Intervenor-Respondent-Cross Appellant,** | ) |
| | ) |
| | ) |
| **and** | ) |
| | ) |
| **THE CITY OF POCATELLO,** | ) |
| | ) |
| **Intervenor-Respondent-Cross Appellant.** | ) |
| | ) |
| ————————————————————— | ) |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Gooding County.  Hon. John M. Melanson, District Judge.

The decision of the district court is <u>affirmed.</u>

Barker Rosholt & Simpson, LLP, Twin Falls, Capitol Law Group, PLLC, Gooding and Fletcher Law Office, Burley, for appellants.  Travis Thompson argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondents.  Chris Bromley argued.

Racine, Olson, Nye, Budge & Bailey, Chtd., Pocatello, for respondent-cross-appellant Idaho Ground Water Appropriators.  Thomas J. Budge argued.

Arthur Dean Tranmer, Pocatello and White & Jankowski, Denver, Colorado, for respondent-cross-appellant City of Pocatello.  Sara A. Klahn argued.

HORTON, Justice.

This is an appeal from a district court's order on petition for judicial review from a final order from the Director of the Idaho Department of Water Resources (Department or IDWR). On appeal, the senior surface water rights holders (Surface Water Coalition or Coalition)[1] challenge the court's order affirming the methodology established by the Director for determining material injury caused by the pumping of junior groundwater rights holders (Idaho Groundwater Appropriators or Groundwater Appropriators). The Coalition also appeals the court's failure to require the Director to issue a single final order. The Groundwater Appropriators and Intervenor

---

[1] The Coalition consists of seven entities that hold surface water rights with priority dates senior to the rights of the Groundwater Appropriators, namely A&B Irrigation District, American Falls Reservoir District No. 2, Burley Irrigation District, Milner Irrigation District, Minidoka Irrigation District, North Side Canal Company and Twin Falls Canal Company.

City of Pocatello (the City) assert on cross-appeal that the proper evidentiary standard for determining material injury is a preponderance of the evidence, rather than clear and convincing evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The surface and ground waters in the Snake River Basin are hydraulically connected, such that groundwater pumping can decrease the natural flows in the Snake River and its tributaries. In the 1980s, Idaho began to adjudicate water rights in the Basin in order to determine their nature, extent and priority. In the 1990s, Idaho began to conjunctively manage surface and ground water rights pursuant to rules (Conjunctive Management Rules or Rules) promulgated by the Department.[2] In 2007, this Court rejected a facial challenge to the Rules' constitutionality. *Am. Falls Reservoir Dist. No. 2 v. Idaho Dep't of Water Res.*, 143 Idaho 862, 154 P.3d 433 (2007) (AFRD #2).

This appeal arises from a January 2005 delivery call initiated by the Coalition which alleged that the Coalition was suffering material injury due to pumping by the Groundwater Appropriators. In his initial order responding to the delivery call, dated February 14, 2005, the Director wrote:

> Based upon the Idaho Constitution, Idaho Code, the conjunctive management Rules, and decisions by Idaho courts, . . . it is clear that injury to senior priority surface water rights by diversion and use of junior priority ground water rights occurs when diversion under the junior rights intercept a sufficient quantity of water to interfere with the exercise of the senior primary and supplemental water rights for the authorized beneficial use. Because the amount of water necessary for beneficial use can be less than decreed or licensed quantities, it is possible for a senior to receive less than the decreed or licensed amount, but not suffer injury. Thus, senior surface water right holders cannot demand that junior ground water right holders diverting water from a hydraulically-connected aquifer be required to make water available for diversion unless that water is necessary to accomplish an authorized beneficial use.
>
> . . .
>
> Whether the senior priority water rights held by or for the benefit of members of the Surface Water Coalition are injured depends in large part on the total supply of water needed for the beneficial uses authorized under the water rights held by members of the Surface Water Coalition and available from both natural flow and reservoir storage combined. To administer junior priority ground

---

[2] For a more detailed exploration of the hydrology and history underlying the adjudication and conjunctive management of Idaho's surface and groundwater, see then-Chief Justice Eismann's opinion in *Clear Springs Foods, Inc. v. Spackman*, 150 Idaho 790, 252 P.3d 71 (2011).

water rights while treating the natural flow rights and storage rights of the members of the Surface Water Coalition separately would either: (1) lead to the curtailment of junior priority ground water rights, absent mitigation, when there is insufficient natural flow for the senior water rights held by the members of the Surface Water Coalition even though the reservoir space allocated to members of the Surface Water Coalition is full; or (2) lead to the curtailment of junior priority ground water rights, absent mitigation, anytime when the reservoir space allocated to the members of the Surface Water Coalition is not full even though the natural flow water rights held by members of the Surface Water Coalition were completely satisfied. Either outcome is wholly inconsistent with the provision for "full economic development of underground water resources" in Idaho Code § 42-226 articulated as "optim[al] development" in *Baker v. Ore-Ida Foods, Inc.*, 95 Idaho 575, 584, 513 P.2d 627, 636 (1973).

The Director initiated a contested case, ordered the Coalition members to submit certain information about their water rights, and stated that he would determine the extent of any injury after the annual issuance of April 1st release forecasts.

On May 2, 2005, the Director issued an amended order. The amended order's findings of fact contained a section titled "Water Supply Historically Available and Predicted to be Available in 2005." In summary, this section reiterated the statement that material injury only exists if a senior water right holder lacks sufficient water to meet its authorized beneficial uses and that this amount may differ from the senior's total decreed or licensed right. Working from this premise and "for the limited purpose of assessing reasonably likely material injury" caused by diversion of ground water by holders of junior water rights, the Director projected the minimum amount of natural flow and carryover storage water necessary for each member of the Coalition to meet its needs. The Director also ordered the Groundwater Appropriators to provide replacement water or curtail their consumptive uses.

On May 11, 2005, the Director granted the City of Pocatello's petition to intervene. Over the course of the next three years, the Director issued a series of supplemental orders that assessed the predicted amount of replacement water necessary for mitigation and/or retroactively determined the amount actually left wanting at the close of each irrigation season.[3]

The third of these supplemental orders summarized the Director's methodology for determining whether senior surface water right holders were likely to incur material injury as follows:

---

[3] The seventh supplemental order is not in the record on appeal.

(1) Determine the minimum full water supply needed for irrigation (natural flow and reservoir storage releases) by the members of the Surface Water Coalition;

(2) Compare the forecast as of April 1, 2005, for unregulated inflow from the Upper Snake River Basin for the time period of April 1, 2005, through July 31, 2005, with historic unregulated inflow from the Upper Snake River Basin for the period of April 1 through July 31;

(3) Select a year or years of similar unregulated inflow and assume that: (a) natural flow diversions in 2005 will be essentially the same as the natural flow diversion in the similar year(s); (b) water stored in the reservoirs after April 1 in the similar year(s) added to the volume actually stored as of April 1, 2005, adjusted for evaporation, will be the total reservoir storage available for release and use in 2005; and (c) the sum of the predicted natural flow diversions and the predicted reservoir storage, adjusted for evaporation, constitutes the [sic] "the predicted 2005 water supply"; and

(4) For each member of the Surface Water Coalition, subtract the predicted total water supply for 2005 from the minimum full water supply needed, and to the remainder add the amount of carryover storage reasonably needed assuming a drought year in 2006, unless the remainder is negative and the value equals or exceeds the reasonably needed carryover storage. The extent of the material injury predicted, or presumed, for each member of the Surface Water Coalition equaled the sum of predicted shortage from the minimum full water supply, if any, and the amount of predicted short fall [sic] in carryover storage, if any.

(5) Provide a procedural framework under which the water supply needed by each member of the Surface Water Coalition could be increased above the minimum full supply assumed to be needed, up to the limits of the water rights held by or for the benefit of members of the Coalition, or decreased from the minimum full supply assumed to be needed, based on actual climatic and water supply conditions for 2005, and the extent of material injury correspondingly adjusted.

(footnotes omitted). This order added the following footnote to the first paragraph:

Water rights held by or for the benefit of members of the Surface Water Coalition entitle the diversion of up to the full quantities of water authorized by the respective rights when needed for the full beneficial use defined under the rights. For a variety of reasons (e.g., cropping patterns, changes in irrigation methods, reductions in irrigated acreage, weather, etc.) the full quantities of water authorized by the respective rights are often not needed, and junior priority rights are not subject to curtailment to provide for the differences, if any, between the maximum quantities of water authorized by the rights and the lesser quantities of water actually needed. The Director determined that 1995 was the most recent year that the members of the Surface Water Coalition received a water supply sufficient for the beneficial uses made under the respective rights and, based on available information, used the amounts of water diverted during the 1995 irrigation season as measures of the quantities of water needed for current

5

conditions (herein termed "minimum full water supply"), while recognizing that amounts of water up to the <u>maximum</u> quantities authorized by the water rights held by or for the benefit of the Coalition could be demanded upon a showing of need. To date, the Surface Water Coalition has not shown such need.

(underlining original).

On April 29, 2008, the Department hearing officer reviewing the Director's several orders issued a 68-page opinion and recommendation.[4] The hearing officer recognized that the Director's methodology for determining material injury "departs from the practice of recognizing a call at the level of the licenses or decrees, understanding that if less water is needed less will be delivered." The hearing officer observed:

Inherent in the application of the minimum full supply is the assumption that, if it accurately defines need, use of water above that amount would not be applied to a beneficial use and would constitute waste. This strains against the assumption that the senior users are entitled to the full extent of their . . . licensed or decreed rights which at some point has been determined to be an amount they could beneficially use. The hedge built into the concept of minimum full supply as initially outlined in the May 2, 2005 Order is that the minimum full supply is a base that can be raised if more is needed to satisfy crop and storage requirements. Inherent in the prospect of using a baseline approach in ground water to surface water use is the possibility that it might translate back to the surface to surface administration and change the historical practice.

Nonetheless, the hearing officer concluded that "[t]he attempt to project the amount of water that is necessary for the members of [the Coalition] to fully meet crop needs within the licensed or decreed amounts is an acceptable approach to conjunctive management . . . ."

Noting that "[t]he use of the term 'minimum full supply' has become a lightning rod of discontent of all parties," the hearing officer concluded that "there have been applications of the concept of a minimum full supply that should be modified if the use of the protocol is to be retained," "[t]here must be adjustments as conditions develop if any baseline supply concept is to be used," "[u]sing the minimum full supply as a fixed amount in effect readjudicates a water right outside the processes of the SRBA," and "it is time for the Department to move to further analysis to meet the goal of the minimum full supply but with the benefit of the extended information and analysis offered by the parties and available to its own staff." The hearing officer explained that "[t]he concept of a baseline is that it is adjustable as weather conditions or practices change, and that those adjustments will occur in an orderly, understood protocol." The

---

[4] Retired Chief Justice Gerald F. Schroeder served as Department's hearing officer. As is characteristic of the opinions of its author, the opinion and recommendation was thorough and insightful.

hearing officer made several recommendations as to how to improve the baseline methodology by making it more responsive to actual conditions.

The hearing officer determined that the Director had acted reasonably by ordering curtailment or mitigation sufficient to meet only one year, rather than multiple years, of the Coalition's carryover storage needs. The hearing officer recommended that replacement water plans ordered by the Director comply with the procedural steps necessary for approval of mitigation plans, as set forth in the Conjunctive Management Rules. Finally, the hearing officer concluded that the Director had erred by accepting Twin Falls Canal Company's full headgate delivery as being 3/4 of a miner's inch per acre, because it had been established by a prior judicial determination to be 5/8 of a miner's inch.

On September 5, 2008, the Director issued his Final Order Regarding the Surface Water Coalition Delivery Call (Final Order). The Director adopted most of the hearing officer's findings and recommendations, and offered additional comment only as to those issues with which he disagreed or felt that additional explanation was necessary. The Director did not discuss the hearing officer's recommendation regarding the measure of Twin Falls Canal Company's full headgate delivery.

In the Final Order, the Director substituted the term for "reasonable in-season demand" for "minimum full supply" and stated that "[b]ecause of the need for ongoing administration, the Director will issue a separate final order before the end of 2008 detailing his approach for predicting material injury to reasonable in-season demand and reasonable carryover for the 2009 irrigation season." Although the Director agreed with the hearing officer that mitigation plans are a useful tool, he concluded that replacement water plans should not be forced to comply with the procedural requirements applicable to mitigation plans. The Director reasoned that approval as a mitigation plan would require curtailment of junior ground water users without a hearing because they could not formulate a mitigation plan until they knew how much water would be owed to the Coalition. The Director concluded that a formal mitigation plan should be submitted after a record has been developed through the hearing process, but that "[a]uthorizing replacement water plans ensures that the senior water user making the delivery call is made whole during the pendency of the proceeding and the junior is not irreparably harmed prior to a hearing on the call." The Director also concluded that "replacement water for predicted shortages to reasonable

carryover should be provided in the season in which the water can be put to beneficial use, not the season before."

Thereafter, the parties filed petitions for judicial review. The Director did not issue the promised separate order addressing the refined material injury methodology before the district court engaged in judicial review of the Final Order.[5]

On July 24, 2009, the district court issued its Order on Petition for Judicial Review. The district court held that the Director erred in four respects. First, the district court found no distinction between replacement water plans and mitigation plans and observed that the use of replacement water plans permitted the Rules governing mitigation plans to be circumvented. Second, the district court held that the Director abused his discretion by categorically limiting senior water right holders' rights to reasonable carryover storage to one year. Third, the district court determined that that the Director had exceeded his authority by determining that full headgate delivery for the Twin Falls Canal Company should be calculated at 5/8 of a miner's inch per acre instead of 3/4 of a miner's inch. Finally, the district court concluded that the Director abused his discretion by issuing two distinct final orders rather than a single final order that resolved all of the issues. The district court upheld the Director's adoption of a baseline methodology for determining material injury. Thus, the district court affirmed in part, reversed in part, and remanded the matter to the Department for further proceedings.

Several parties filed petitions for rehearing of the district court's order. In its briefing and at oral argument on the petitions for rehearing, the Department advised the district court that it could generate its revised baseline methodology for determining material injury based upon the existing record. As a result, the court decided to stay issuance of its final order on the petitions for rehearing. The district court ordered the Director to "issue a *Final Order* determining material injury to reasonable in-season demand and reasonable carryover" and notified the parties that they had seven days to object to the court's order holding its final order in abeyance.

On April 7, 2010, the Director issued his Final Order Regarding Methodology for Determining Material Injury to Reasonable In-Season Demand and Reasonable Carryover. This order set forth a refined methodology for determining material injury, starting from a predictive baseline of the senior water right holders' actual needs. The order also noted that the Director

---

[5] The district court noted that the Director had issued an order regarding the protocol for material injury on June 30, 2009, but that order was not part of the record on judicial review.

had accepted the hearing officer's recommendation that the full headgate delivery for Twin Falls Canal Company be 5/8 of a miner's inch per acre rather than 3/4 of a miner's inch.

The district court subsequently lifted the stay on the petitions for rehearing and entered an order on August 23, 2010, to the effect that, although the Director had initially abused his discretion by failing to determine a methodology for determining material injury to reasonable in-season demand and reasonable carryover, the Director had complied with the court's order on remand by issuing a methodology order. The district court further concluded that, although the Director had abused his discretion by failing to comply with the Rules' prescribed procedures for adoption of mitigation plans, there was no practical remedy that could be afforded. The court then remanded the matter to the Director for application of "the 'clear and convincing' evidentiary standard and appropriate burdens of proof when determining full headgate delivery for the Twin Falls Canal Company water right . . . ." The court subsequently entered an amended order on the petitions for rehearing. Therein, the court slightly modified the holding of its original order on rehearing, instructing that:

> While the Court has ruled that the Director abused his discretion and exceeded his authority by failing to follow procedural steps for mitigation plans as set forth in the [Rules], and for failing to apply the correct presumptions and burden of proof in making the determination under the [Rules] that [Twin Falls Canal Company] was entitled to less than the quantity recommended, there is no practical remedy to cure those errors at this point in the proceedings, and the Director has, upon remand, calculated 3/4 inch per acre as [Twin Falls Canal Company's] full headgate delivery.

The court otherwise affirmed the Director's order of September 5, 2008.

The Coalition appeals the district court's affirmance of the Director's baseline methodology for determining material injury, as well as the failure to order the Director to issue a single final order resolving all contested issues. The Groundwater Appropriators and the City contend that preponderance of the evidence is the appropriate evidentiary standard with regard to determinations of material injury, and thus appeal the district court's determination that such determination should reflect the clear and convincing evidence standard.

## II. ISSUES ON APPEAL

1. Whether the Director may utilize a baseline methodology—a methodology based upon the senior water right holder's projected need in considering whether that right holder has been materially injured.

2. Whether the Conjunctive Management Rules permit out-of-priority diversions without requiring such diversions be explained and justified within a properly enacted mitigation plan.

3. Whether the district court erred by permitting the Director to bifurcate his final order.

4. Whether the clear and convincing evidence standard or the preponderance of the evidence should be applied to the determination of material injury.

### III. STANDARD OF REVIEW

Idaho Code § 67–5279 governs judicial review of agency action. Accordingly, a district court:

> must affirm the agency unless it finds that the agency's findings, inferences, conclusions, or decisions are: "(a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion."

*Clear Springs Foods, Inc. v. Spackman*, 150 Idaho 790, 796, 252 P.3d 71, 77 (2011) (quoting I.C. § 67–5279(3)). The "agency action shall be affirmed unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4). The district court's review is limited to those issues raised before the administrative tribunal and those the tribunal lacked the authority to decide. *Clear Springs Foods, Inc.*, 150 Idaho at 797, 252 P.3d at 78 (quoting *Johnson v. Blaine Cnty.*, 146 Idaho 916, 920, 204 P.3d 1127, 1131 (2009)).

On appeal from a district court's review of agency action, this Court reviews the district court's decision to determine whether the issues were correctly decided. *Id*. (citing *Wright v. Bd. of Psychological Examiners*, 148 Idaho 542, 544-45, 224 P.3d 1131, 1133-34 (2010)). Although the parties may have raised many issues during the administrative proceedings, this Court will only consider those issues raised before the district court. *Id.* (citing *Marcia T. Turner, L.L.C. v. City of Twin Falls*, 144 Idaho 203, 208, 159 P.3d 840, 845 (2007)).

### IV. ANALYSIS

**A. The Director may employ a baseline methodology as a starting point for considering material injury.**

On judicial review, the district court held that "[t]he Director did not abuse discretion or act outside his authority in utilizing a 'minimum full supply' or 'reasonable in-season demand' baseline for determining material injury." The court described the Director's methodology as follows:

In determining material injury to senior rights the Director considered a "baseline" quantity independent of the decreed or licensed quantity. The baseline quantity represented the amount of water predicted from natural flow and storage needed to meet in-season irrigation requirements and reasonable-carryover. The Director then determined material injury based on shortfalls to the predicted baseline as opposed to the decreed or licensed quantities.

The district court next responded to the Coalition's allegations that the Director's methodology was improper.

On first impression it would appear that the use of such a baseline constitutes a re-adjudication of a decreed or licensed water right. As stated by the Hearing Officer "[t]he logic of [the Coalition] in objecting to the Director's use of a minimum full supply is difficult to avoid." However, on closer examination the use of baseline is a necessary result of the Director implementing the conditions imposed by the [Rules] with respect to regulating junior rights to protect senior storage rights. Put differently, senior right holders are authorized to divert and store up to the full decreed or licensed quantities of their storage rights, but in times of shortage juniors will only be regulated or required to provide mitigation subject to the material injury factors set forth in [Rule] 042. Rule 042 of the [Rules] lists a number of factors the Director is to consider in determining material injury to senior rights. [Rule] 042.01a-h. As this Court concluded previously, the total combined decreed quantity of the natural flow and storage rights can exceed the amount of water necessary to satisfy in-season demands plus reasonable carry-over. Simply put, pursuant to these factors a finding of material injury requires more than shortfalls to the decreed or licensed quantity of the senior right. Although the [Rules] do not expressly provide for the use of a "baseline" or other methodology, the Hearing Officer concluded that: "Whether one starts at the full amount of the licensed or decreed right and works down when the full amount is not needed or starts at base and works up according to need, the end results should be the same." Ultimately the Hearing Officer determined that the use of a baseline estimate to represent predicted in-season irrigation needs was acceptable provided the baseline was adjustable to account for weather variations and that the process satisfied certain other enumerated conditions. This Court affirms the reasoning of the Hearing Officer on this issue.

(citations to record omitted).

On appeal, the Coalition asserts that the district court erred in affirming the Director's baseline methodology. The Coalition argues that any methodology founded upon the prediction of the minimum amount of water actually necessary to satisfy a senior water right holder's irrigation and storage needs is contrary to the doctrine of prior appropriation as established by Idaho constitutional, statutory, and case law. A decreed or licensed water right, contends the Coalition, creates a presumption that the full extent of the right has already been defined by its beneficial use. The Coalition further argues that junior water right holders bear the burden of

11

proving any defenses against the seniors' rights. In effect, the Coalition asserts, the Director's methodology created a de facto defense for junior water right holders and forces senior water right holders to re-prove their decreed or licensed rights. The Groundwater Appropriators, Department and the City advance a variety of responsive arguments.

     1.  <u>The propriety of a baseline methodology is properly before the Court.</u>

To begin, the Groundwater Appropriators and Department each contend that this issue is moot because the Director's final order described a modified methodology referred to as "reasonable in-season demand" rather than "minimum full supply." In a similar vein, the Groundwater Appropriators also argue that, although the Coalition frames its argument on appeal as a challenge to any methodology that incorporates a predictive baseline analysis of senior water rights holders' needs, the Coalition's request for judicial review and the present appeal are specifically limited to the Director's minimum full supply methodology and a ruling from this Court beyond that narrow scope would constitute an impermissible advisory opinion. They contend that the propriety of the Director's modified methodology is not properly before this Court on appeal because it was created subsequent to the district court's order on petition for judicial review and is currently subject to judicial review by the district court.

These arguments are based upon the premise that the district court's judicial review was limited to the Director's original iteration of the minimum full supply methodology. As noted earlier, this Court may only consider those issues raised before the district court. *Clear Springs Foods, Inc.*, 150 Idaho at 797, 252 P.3d at 78. It is true that the Director entered his final order regarding the modified methodology more than eight months after the court's entry of its order on petition for judicial review. Since the district court did not review this final methodology order, the findings of fact that shape that methodology and any modifications to the methodology are not properly before this Court.

However, the district court did not merely address the minimum full supply methodology. Rather, it adopted the hearing officer's conclusion that "the use of a baseline estimate to represent predicted in-season irrigation needs was acceptable provided the baseline was adjustable to account for weather variations and that the process satisfied certain other enumerated conditions." Thus, the district court reviewed, as a matter of law, the propriety of predicting material injury based upon shortfalls to a chosen baseline quantum of senior water rights holders' in-season irrigation and reasonable carryover needs. As previously stated, the

12

nuances of the final methodology order are not properly before this Court.[6] *Id*. However, given the legal issue that the district court decided, we may determine whether and for what purposes a baseline methodology is consistent with Idaho law. The Court's consideration and resolution of this question will resolve a real and substantial controversy; therefore, the issue is not moot and an opinion resolving the matter will not be advisory. *See Fenn v. Noah*, 142 Idaho 775, 779, 133 P.3d 1240, 1244 (2006); *State v. Rhoades*, 119 Idaho 594, 597-98, 809 P.2d 455, 458-59 (1991).

    2.  <u>The Director may, consistent with Idaho law, employ a baseline methodology for management of water resources and as a starting point in administration proceedings.</u>

Although the parties direct their briefing primarily to the issue of utilization of the baseline methodology in the context of determining a water call, as recognized by the hearing officer and district court, the baseline is used also as a predictive tool in preparing the Director's pre-season plan for allocation of water. That is, the Director has used it both for management of the resource and in determining material injury in the context of a water call. With regard to the usage of the baseline in the management context, the Director is required to observe the well-established legal principles of Idaho's prior appropriation doctrine. Additionally, when utilizing the baseline in the administration context, the Director must abide by established evidentiary standards, presumptions, and burdens of proof.

It bears mentioning at this point that this is not a water rights case. By virtue of the Snake River Basin Adjudication, the water rights involved in this proceeding are well known and established. This is a water management case wherein the management authority and discretion of the Director are at issue. However, both management and administration must be conducted in accordance with the basic tenets of the prior appropriation doctrine.

The prior appropriation doctrine is comprised of two bedrock principles—that the first appropriator in time is the first in right and that water must be placed to a beneficial use. Article XV, section 3 of the Idaho Constitution provides that "[t]he right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied . . . . Priority of appropriation shall give the better right as between those using the water . . . ." These two doctrines encouraged settlers to divert surface water from its natural course and put it to

---

[6] Woven throughout the parties' briefing on appeal are attacks upon the sufficiency of the evidence supporting the findings of the Director and the district court. The challenged findings are central to the final iteration of the Director's methodology for determining material injury. Since the district court's order on petition for judicial review, which this Court now reviews on appeal, did not address the Director's final order on methodology, the factual basis underlying the final methodology order is not properly before this Court at this time.

beneficial use, thus leading to the development of Idaho's arid landscape. *Pocatello v. State*, 145 Idaho 497, 502, 180 P.3d 1048, 1053 (2008). This Court long ago held that prior appropriation also governs interests in groundwater. *Bower v. Moorman*, 27 Idaho 162, 181, 147 P. 496, 502 (1915) (citing *Le Quime v. Chambers*, 15 Idaho 405, 98 P. 415 (1908)).

The concept that beneficial use acts as a measure and limit upon the extent of a water right is a consistent theme in Idaho water law. *E.g.*, I.C. § 42-220 ("neither [a] licensee nor anyone claiming a right under [a] decree, shall at any time be entitled to the use of more water than can be beneficially applied on the lands for the benefit of which such right may have been confirmed."); *AFRD #2*, 143 Idaho 862, 880, 154 P.3d 433, 451 (2007) ("Neither the Idaho Constitution, nor statutes, permit irrigation districts and individual water right holders to waste water or unnecessarily hoard it without putting it to some beneficial use."); *Wash. State Sugar Co. v. Goodrich*, 27 Idaho 26, 44, 147 P. 1073, 1079 (1915) ("It is the settled law of this state that no person can, by virtue of a prior appropriation, claim or hold more water than is necessary for the purpose of the appropriation, and the amount of water necessary for the purpose of irrigation of the lands in question and the condition of the land to be irrigated should be taken into consideration."); *Conant v. Jones*, 3 Idaho (3 Hasb.) 606, 612-13, 32 P. 250, 251 (1893) (prior appropriator may ultimately claim entirety of his original appropriation, but he is only entitled to the amount of water he actually puts to beneficial use during the time it takes him to prepare his land for cultivation).

This case illustrates the tension between the first in time and beneficial use aspects of the prior appropriation doctrine. In the context of developing a water allocation plan for an up-coming irrigation season, the Idaho Legislature has authorized the Director "to adopt rules and regulations for the distribution of water from the streams, rivers, lakes, ground water, and other natural water resources as shall be necessary to carry out the laws in accordance with the priorities of the rights of the users thereof." I.C. § 42-603. The Director has done so in the Conjunctive Management Rules (CM Rules), which were approved by the Legislature and became effective on October 7, 1994.[7] In *AFRD #2*, after discussing and upholding the CM

---

[7] Existing law was incorporated into the CM Rules, as noted by the Court in *AFRD #2*:

> CM Rule 20.02 provides that: "[T]hese rules acknowledge all elements of the prior appropriation doctrine as established by Idaho law." "Idaho law," as defined by CM Rule 10.12, means "[T]he constitution, statutes, administrative rules and case law of Idaho." Thus, the Rules incorporate Idaho law by reference and to the extent the Constitution, statutes and case law have identified the

Rules, this Court recognized the critical role of the Director in managing the water resource to accommodate both the first in time and beneficial use aspects: "Somewhere between the absolute right to use a decreed water right and an obligation not to waste it and to protect the public's interest in this valuable commodity, lies an area for the exercise of direction by the Director." *AFRD #2*, 143 Idaho at 880, 154 P.3d at 451. The authority of the Director to prepare and implement a water allocation plan as part of his management responsibility has not been challenged by any party in this proceeding, perhaps in recognition of the fact that an interconnected system of ground and surface water as complicated as the Snake River Basin, with as many variables, moving parts, and imponderables that present themselves during any particular irrigation season, simply cannot be managed without a great deal of prior analysis and planning toward determining the proper apportionment of water to and among the various water right holders according to their priority. The use of a baseline methodology in this context is, therefore, not inconsistent with Idaho law.

The more difficult issue lies in the use of a baseline in the administration context. In this case, the Director used the baseline methodology, both as a starting point for consideration of the Coalition's call for administration and in determining the issue of material injury. The hearing officer approved the Director's methodology on both counts and the district court affirmed. The hearing officer reasoned that (1) it is presumed that a senior water right holder is entitled to its decreed or licensed amount of water; (2) a senior water right holder that alleges material injury must do so under oath, along with a description of its water right and the facts upon which it bases its allegation; and (3) the Coalition provided evidence of its material injury. The hearing officer next expressly recognized that "[t]he process utilized in this case deviated from that anticipated by the Supreme Court" in *AFRD #2*, because the burden did not shift to the junior ground water users to show a defense to the Coalition's delivery call.[8] The hearing officer then quoted the Director's testimony that the Director believed that the initial burden of determining the extent of material injury should not rest with junior water rights holders, but rather with

proper presumptions, burdens of proof, evidentiary standards and time parameters, those are a part of the CM Rules.

143 Idaho at 873, 154 P.3d at 444.

[8] The hearing officer also pointed out that the "Director did not have the benefit of *AFRD #2* when [the Coalition] made its request for administration in this case."

IDWR. The Director reasoned that, like the senior water right holders, the junior right holders possessed decreed rights such that he:

> didn't think it was appropriate to say, okay, prove that you're not causing any injury . . . .
>
> . . .
>
> And so in developing this May 2nd Order, I tried to develop a process under which the State would take the initial burden of making these determinations . . . .
>
> . . .
>
> And during that hearing process either side of this . . . could have and probably would have brought forward information about why 1995 was or wasn't a good year to use for the minimum full supply. And certainly, in that process I would have been open to considering other methodologies, other criteria. But I thought it was important that the State take the first step to try to bring some resolution to this. The idea was that doing it this way might bring the two sides closer together.

Although, with these statements, the Director expressly rejected the concept of placing the burden of proof upon junior water right holders, the hearing officer held that the Director's methodology "makes sense and is consistent with the construction of the Conjunctive Management Rules," although the methodology failed to anticipate the allocation of the burden of proof we articulated in *AFRD #2*. Recognizing the Director's authority and responsibility to investigate claims when delivery calls are made, the hearing officer reasoned that "[w]hether the Director approached the case applying the legal burdens established in *AFRD #2* or not, the Director had the authority and the responsibility to develop the facts upon which a well-informed decision could be made and to make a decision from the best information developed." Although the hearing officer stated that "[the Groundwater Users] and [the City] have the burden of establishing defenses to [the Coalition's] claims," it concluded that "[t]he parties may rely on facts developed by the Director," and affirmed application of the Director's baseline methodology.

In evaluating the Director's use of the baseline in considering and determining the issue of material injury, and whether that procedure transgressed provisions of Idaho law, it is appropriate to look for guidance to *AFRD #2*. There, we stated:

> CM Rule 42 lists factors "the Director may consider in determining whether the holders of water rights are suffering material injury and using water efficiently and without waste. . . ." IDAPA 37.03.11.42.01 Such factors include the system, diversion, and conveyance efficiency, the method of irrigation water application and alternate reasonable means of diversion. *Id.* American Falls argues the Director is not authorized to consider such factors before administering water rights; rather, the Director is "required to deliver the *full quantity* of decreed

16

senior water rights according to their priority" rather than partake in this re-evaluation. . . .

Clearly, even as acknowledged by the district court, the Director may consider factors such as those listed above in water rights administration. Specifically, the Director "has the duty and authority" to consider circumstances when the water user is not irrigating the full number of acres decreed under the water right. If this Court were to rule the Director lacks the power in a delivery call to evaluate whether the senior is putting the water to beneficial use, we would be ignoring the constitutional requirement that priority over water be extended only to those using the water.

143 Idaho at 876, 154 P.3d at 447. We went on to note that the Director has discretionary authority in a water management case that is not available to him in a water rights case: "[r]easonableness is not an element of a water right; thus, evaluation of whether a diversion is reasonable in the administration context should not be deemed a re-adjudication." *Id.* at 877, 154 P.3d at 448.

While recognizing the Director's authority to evaluate the issue of beneficial use in the administration context, we stated:

While there is no question that some information is relevant and necessary to the Director's determination of how best to respond to a delivery call, the burden is not on the senior water rights holder to re-prove an adjudicated right. The presumption under Idaho law is that the senior is entitled to his decreed water right, but there certainly may be some post-adjudication factors which are relevant to determination of how much water is actually needed. The Rules may not be applied in such a way as to force the senior to demonstrate an entitlement to the water in the first place; that is presumed by the filing of a petition containing information about the decreed right. The Rules do give the Director the tools by which to determine "how the various ground and surface water sources are interconnected, and how, when, where and to what extent the diversion and use of water from one source impacts [others]. Once the initial determination is made that material injury is occurring or will occur, the junior then bears the burden of proving that the call would be futile[,] or to challenge, in some other constitutionally permissible way, the senior's call.

*Id.* at 878, 154 P.3d at 449. Thus, any determination of a delivery call requires application of established evidentiary standards, legal presumptions and burdens of proof.

Based on the foregoing, we conclude as follows:

1. The Director may develop and implement a pre-season management plan for allocation of water resources that employs a baseline methodology, which methodology must comport in all respects with the requirements of Idaho's prior

17

appropriation doctrine, be made available in advance of the applicable irrigation season, and be promptly updated to take into account changing conditions.

2. A senior right holder may initiate a delivery call based on allegations that specified provisions of the management plan will cause it material injury. The baseline serves as the focal point of such delivery call. The party making the call shall specify the respects in which the management plan results in injury to the party. While factual evidence supporting the plan may be considered along with other evidence in making a determination with regard to the call, the plan by itself shall have no determinative role.

3. Junior right holders affected by the delivery call may respond thereto, and shall bear the burden of proving by clear and convincing evidence that the call would be futile or is otherwise unfounded. A determination of the call shall be made by the Director in a timely and expeditious manner, based on the evidence in the record and the applicable presumptions and burdens of proof.

**B. The Conjunctive Management Rules require that out-of-priority diversions only be permitted pursuant to a properly enacted mitigation plan.**

The Coalition and the City dispute whether the Director timely administered the delivery call. The district court held that the Director abused his discretion because he failed to require mitigation of material injury to reasonable carry-over storage in the season in which the injury occurs. In effect, the City completely disregards the holding of the district court, relying instead upon this Court's statement in *AFRD #2* that a strict schedule cannot be imposed upon the delivery call process due to the complexity of the factual determinations inherent to the process. 143 Idaho at 875, 154 P.3d at 446.

However, the issue considered by the district court in this case was narrower than that before this Court in *AFRD #2*. Here, the district court assessed whether the Director's "wait and see" approach to mitigating material injury to carry-over storage rights complied with the Conjunctive Management Rules. Based on the plain language of Rule 43, the district court concluded that the Director's approach was contrary to the Rule's requirement that the mitigation plan contain contingency provisions to protect senior rights in the event that mitigation water becomes unavailable.

Rule 42 provides that determination of material injury must account for the fact that:

> [T]he holder of a surface water storage right shall be entitled to maintain a reasonable amount of *carry-over storage to assure water supplies for future dry years*. In determining a reasonable amount of carry-over storage water, the Director shall consider the average annual rate of fill of storage reservoirs and the average annual carry-over for prior comparable water conditions and the projected water supply for the system.

IDAPA 37.03.11.042.01.g. (emphasis added). Rule 40 provides that once the Director makes a determination of material injury, the Director shall:

> a. *Regulate* the diversion and use of water *in accordance with the priorities* of rights of the various surface or ground water users whose rights are included within the district, *provided, that regulation* of junior-priority ground water diversion and use *where the material injury is delayed or long range* may, by order of the Director, *be phased-in over not more than a five-year (5) period* to lessen the economic impact of immediate and complete curtailment; *or*
> b. *Allow out-of-priority diversion* of water by junior-priority ground water users *pursuant to a mitigation plan* that has been approved by the Director.

IDAPA 37.03.11.040.01.a,b (emphasis added). In other words, when the Director responds to a delivery call regarding diversions occurring within an area having a common ground water supply in an organized water district, the Director shall either regulate and curtail the diversions causing injury or approve a mitigation plan that permits out-of-priority diversion. *Id.*

Nothing in the Director's order suggests that he intended a phased-in mode of curtailment, and therefore the option to permit out-of-priority diversion pursuant to a mitigation plan is the applicable provision in the instant case. Where a mitigation plan is the response to material injury, the Rules provide that the Director must consider several factors to determine whether the proposed plan "will prevent injury to senior rights," including:

> Whether the mitigation plan provides replacement water supplies or other appropriate compensation to the senior-priority water right *when needed* during a time of shortage even if the effect of pumping is spread over many years and will continue for years after pumping is curtailed. A mitigation plan *may allow for multiseason accounting* of ground water withdrawals and provide for replacement water to take advantage of variability in seasonal water supply. The mitigation plan *must include contingency provisions to assure protection of the senior-priority right in the event the mitigation water source becomes unavailable*.

IDAPA 37.03.11.043.03.c (emphasis added). As the district court held, this language is unambiguous. Thus, while the Rules permit a mitigation plan to "wait and see" how much water is necessary to protect against material injury, they require that such plan identify prospective

means by which water will be provided in order to prevent material injury. As the district court stated, the system established by the Director causes

> . . . the prior appropriation doctrine [to be] turned upside down. Therefore, unless assurances are in place that carry-over shortfalls will be replaced if the reservoirs do not fill, the risk of shortage ultimately falls on the senior. As such, the very purpose of the carry-over component of the storage right – insurance against risk of future shortage – is effectively defeated.

We affirm the district court's holding that the Director abused his discretion by failing to approve a mitigation plan that provided contingency plans by which junior water right holders would ensure that material injury would not occur to the seniors' carry-over storage rights.

## C. The Coalition failed to preserve its right to appeal the district court's failure to order the Director to issue a single final order.

The Director adopted the hearing officer's conclusion that refinements to the methodology for determining material injury were necessary, but did not include those refinements in his final order of September 5, 2008, which is the order from which the parties sought judicial review. Instead, the Director stated that he would "issue a separate, final order before the end of 2008 detailing his approach for predicting material injury to reasonable in-season demand and reasonable carryover for the 2009 irrigation season." In its July 24, 2009, order on petition for judicial review, the district court held that by issuing separate final orders, the Director acted contrary to I.C. §§ 67-5244, 67-5246, and 67-5248, as well as IDWR Administrative Rules 720 and 740, and thus abused his discretion.[9] The district court observed that "the issuance of separate 'Final Orders' undermines the efficacy of the entire delivery call process, including the process of judicial review. Such a process requires certainty and definiteness as to the *Final Order* issued, so that any review of the *Final Order* can be complete

---

[9] The relevant portions of these statutes and rules are as follows:

     I.C. § 67-5244(2)(a) provides that the agency head shall "issue a final order in writing within fifty-six (56) days of the receipt of the final briefs or oral argument, whichever is later, unless the period is waived or extended with the written consent of all parties or for good cause shown."

     I.C. § 67-5246(2) provides that "[i]f the presiding officer issued a recommended order, the agency head shall issue a final order following review of that recommended order."

     I.C. § 67-5248 provides that "[a]n order must be in writing and shall include: (a) A reasoned statement in support of the decision. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts of record supporting the findings."

     IDAPA 37.01.01.720.02.c provides that "[t]he agency head or designee will issue a final order within fifty-six (56) days of receipt of the written briefs or oral argument, whichever is later, unless waived by the parties or for good cause shown."

     Finally, IDAPA 37.01.01.740.02.c provides that "[p]ursuant to Sections 67-5270 and 67-5272, Idaho Code, any party aggrieved by this final order or orders previously issued in this case may appeal this final order and all previously issued orders in this case to district court . . . ."

20

and timely." Nonetheless, finding no appropriate remedy to be available, the court did not order any specific form of relief.

On August 14, 2009, the City filed a petition for rehearing requesting clarification as to the opportunity for a hearing with regard to the Director's approval of a mitigation plan. On that same date, the Groundwater Appropriators also filed a petition for rehearing requesting, in relevant part, that the district court order the Director to issue a single final order as to all issues. On November 6, 2009, the Coalition submitted a response to the petitions for rehearing and argued that the best approach "consistent with the requirements of judicial review under Idaho's APA, [was] to presume the Director will issue a new final order consistent with this Court's order," and address any insufficiencies once the Director's order was available for review.

On March 4, 2010, the court entered an order staying the decision on petitions for rehearing, pending issuance by the Director of a revised final order. The court issued this order based upon Department's representations that it could issue an order containing the modified material injury methodology based upon existing evidence in the record. The district court ordered that it would "hold in abeyance any final decision on rehearing until such an order is issued and the time periods for filing a motion for reconsideration and petition for judicial review of the new order have expired."

The Director entered his final order regarding the methodology on April 7, 2010. The record does not demonstrate that the Coalition raised any complaints regarding the content of the final order within the time for appeal. *See* I.C. § 67-5273(2) (final order must be appealed within twenty-eight days of its service). The district court resumed its proceedings on rehearing and entered an order on August 23, 2010.

On appeal, the party asserting error with regard to the separate final orders is the Coalition. However, the Coalition has failed to preserve the issue by failing to object before the district court.

**D. This Court's decision in *A & B Irr. Dist. v. Idaho Dep't of Water Resources*, 153 Idaho 500, 284 P.3d 225 (2012), decided the evidentiary standard applicable to determinations of material injury.**

In its Memorandum and Order on Petition for Judicial Review, the district court held that "clear and convincing" was the proper evidentiary standard to determine material injury in a delivery call. The City and the Groundwater Appropriators both contend that the application of

21

the higher evidentiary standard is not supported by Idaho law. We recently rejected this claim in *A & B Irr. Dist. v. Idaho Dep't of Water Resources*, 153 Idaho 500, 284 P.3d 225 (2012), stating:

> It is Idaho's longstanding rule that proof of "no injury" by a junior appropriator in a water delivery call must be by clear and convincing evidence. Once a decree is presented to an administrating agency or court, all changes to that decree, permanent or temporary, must be supported by clear and convincing evidence.

*Id*. at 524, 284 P.3d at 249. We see no reason to deviate from this decision. Accordingly, the decision of the district court is affirmed on this issue.

## V. CONCLUSION

We affirm the district court's order approving the Director's use of a predicted baseline of senior water right holders' needs as a starting point in considering the material injury issue in a water call so long as the Director observes established presumptions and burdens of proof in his determination of the issue. We affirm the district court's holding that the Director abused his discretion by failing to comply with the procedural framework applicable to mitigation plans when he approved replacement water plans. The Coalition has failed to preserve the issue of the bifurcated final orders. We affirm the district court's determination that the clear and convincing evidence standard is to be applied in determining material injury. No costs are awarded.

Chief Justice BURDICK and Justices EISMANN, J. JONES and Justice Pro Tem TROUT **CONCUR**.