**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 43370**

| | | |
|---|---|---|
| IN THE MATTER OF THE FOURTH MITIGATION PLAN FILED BY THE IDAHO GROUND WATER APPROPRIATORS FOR THE DISTRIBUTION OF WATER TO WATER RIGHT NOS. 36-02551 & 36-07694 IN THE NAME OF RANGEN, INC., IDWR DOCKET NO. CM-MP-2014-006, "MAGIC SPRINGS PROJECT". | ) ) ) ) ) ) ) ) ) ) | |
| -------------------------------------------------------- | ) | |
| RANGEN, INC., | ) ) | |
| Petitioner-Appellant, | ) ) | Boise, April 2016 Term |
| v. | ) ) | 2016 Opinion No. 44 |
| IDAHO DEPARTMENT OF WATER RESOURCES, and GARY SPACKMAN, in his capacity as Director of the Idaho Department of Water Resources, | ) ) ) ) ) | Filed: April 26, 2016  Stephen W. Kenyon, Clerk |
| Respondents-Respondents, | ) ) | |
| and | ) ) | |
| IDAHO GROUND WATER APPROPRIATORS, INC., | ) ) ) | |
| Intervenor-Respondent. | ) ) | |
| _____ | ) | |

.

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County.  Hon. Eric J. Wildman, District Judge.

The decision of the district court is <u>affirmed</u>.

May, Browning, and May, PLLC, Boise, Haemmerle Law Office, PLLC, Hailey, and Brody Law Office, PLLC, Rupert, for appellant Rangen, Inc. J. Justin May argued.

1

Honorable Lawrence G. Wasden, Idaho Attorney General, Boise, for respondents Idaho Department of Water Resources and Gary Spackman. Garrick L. Baxter argued.

Racine Olson Nye Budge & Bailey Chartered, Pocatello, for intervenor/respondent Idaho Ground Water Appropriators, Inc. Randall C. Budge argued.

———————————

J. JONES, Chief Justice

This is an appeal from an order issued by the District Court of Twin Falls County, affirming in part an order issued by the Director of the Idaho Department of Water Resources ("IDWR"). In response to a delivery call filed by Rangen, Inc., the Director had issued an order curtailing certain junior-priority ground water pumping in the Eastern Snake Plain Aquifer ("ESPA"). The order provided that the junior-priority ground water users could avoid curtailment by participating in an approved mitigation plan. The Idaho Ground Water Appropriators, Inc. ("IGWA") filed several mitigation plans for approval. The Director issued an order conditionally approving IGWA's Fourth Mitigation Plan, which proposed leasing water from another surface water right holder and piping the water to the Rangen facility. Rangen petitioned for review. The district court upheld the Director's order in significant part. Rangen appealed.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

On December 13, 2011, Rangen filed a petition for delivery call with IDWR, alleging that it was not receiving the full amount of water to which it was entitled under its water rights due to junior-priority ground water pumping in the ESPA. IGWA intervened in the proceeding, representing ground water districts with members whose water rights might be curtailed in response to Rangen's delivery call. On January 29, 2014, the Director concluded that junior-priority ground water pumping was materially injuring Rangen's water rights, and he issued an order curtailing certain junior-priority ground water pumping in the ESPA.

The order provided that junior-priority ground water users could avoid curtailment by participating in an approved mitigation plan that provided Rangen with 9.1 cfs of water. The Director ordered that mitigation may be phased in over a five-year period. If phased in, mitigation would need to provide Rangen with 3.4 cfs of water the first year, 5.2 cfs the second

2

year, 6.0 cfs the third year, 6.6 cfs the fourth year, and 9.1 cfs the fifth year. From February to August 2014, IGWA filed several mitigation plans for approval.[1]

At issue is IGWA's Fourth Mitigation Plan, which proposed the Magic Springs Project. Under the Magic Springs Project, IGWA was to lease or purchase the right to pump 10.0 cfs of first use water from SeaPac of Idaho, Inc. ("SeaPac") at its Magic Springs Facility and pipe the water two miles to the facility owned by Rangen. IGWA and SeaPac executed a letter of intent stating that SeaPac would lease or sell IGWA 10 cfs of first use water from SeaPac's water right no. 36-7072. According to the agreement, IGWA would pay all the costs to construct and maintain the pipeline, pump station, and other facilities needed to deliver the water to Rangen. Additionally, the agreement was contingent on IGWA obtaining an order approving a transfer of the place of use for water right no. 36-7072. On September 10, 2014, IGWA submitted an Application for Transfer of Water Right ("Application for Transfer") to add the Rangen facility as a new place of use for water right no. 36-7072.

The Director held a hearing on IGWA's Fourth Mitigation Plan on October 8, 2014. On October 29, 2014, the Director issued an order conditionally approving the plan. The Director approved IGWA's Fourth Mitigation Plan on the condition that IGWA obtain approval of its Application for Transfer. The Director then concluded that the proceeding on IGWA's Application for Transfer was a more appropriate forum to consider whether the transfer of water from Magic Springs to the Rangen facility would cause other water users injury. The Director's order also required that IGWA purchase an insurance policy "for the benefit of Rangen to cover any losses of fish attributable to the failure of the temporary or permanent pipeline system to the Rangen Facility." Additionally, the order required that Rangen state in writing whether it would accept water delivered pursuant to the Magic Springs Project and whether it would allow construction on its land related to the placement of the pipeline. The order stated that "[i]f the Fourth Mitigation Plan is rejected by Rangen or Rangen refuses to allow construction in accordance with an approved plan, IGWA's mitigation obligation is suspended."

---

[1] IGWA's First Mitigation Plan proposed nine possible mitigation activities. The Director approved two of the nine components: (1) credit for ongoing aquifer enhancement activities and (2) delivery of water through the Morris exchange agreement. The Director gave a mitigation credit for the first plan, but concluded that with that credit there was still a mitigation deficiency of 2.2 cfs for the first year. To address the deficiency, IGWA filed its Second Mitigation Plan, proposing to pipe 9.1 cfs of water from Tucker Springs to Rangen. The Director conditionally approved the Second Mitigation Plan, but it was withdrawn by IGWA. The Fourth Mitigation Plan was filed to replace the mitigation anticipated from the second plan. Consideration of IGWA's Third Mitigation Plan was put on hold due to the Director's conditional approval of the fourth plan.

On November 25, 2014, Rangen filed a petition for judicial review of the Director's order conditionally approving IGWA's Fourth Mitigation Plan. As relevant here, Rangen appealed the Director's decision to defer consideration of potential injury to other water users until the proceeding on the Application for Transfer. Rangen also argued that the Director erred by approving a plan with inadequate contingency provisions and that the Director's order constituted a taking of Rangen's property in violation of the Idaho and United States Constitutions. IGWA intervened in the proceeding.

On February 19, 2015, while judicial review of the order approving the mitigation plan was pending, the Director entered an order approving IGWA's Application for Transfer. In that order, the Director concluded that the transfer would not cause injury to other water right holders. However, as a condition of approval, the Director required that IGWA continue aquifer enhancement activities sufficient to offset 10 cfs of depletion of flow in the Snake River between Kimberly and King Hill. Rangen filed a petition for judicial review challenging in part the Director's conclusions on injury. The district court affirmed the Director's order. Rangen did not appeal.

On May 13, 2015, the district court affirmed in part the Director's order conditionally approving IGWA's Fourth Mitigation Plan.[2] Rangen timely appealed.

## II.
## ISSUES ON APPEAL

1. Whether the Director erred by deferring consideration of potential injury to other water users until the proceeding on IGWA's Application for Transfer.

2. Whether the Director erred by approving a mitigation plan with inadequate contingency provisions.

3. Whether the Director's order conditionally approving the mitigation plan constitutes an unlawful taking.

## III.
## STANDARD OF REVIEW

In an appeal from a district court where the court was acting in its appellate capacity under the Idaho Administrative Procedure Act ("IDAPA"), "we review the decision of the district court to determine whether it correctly decided the issues presented to it." *Clear Springs Foods v. Spackman*, 150 Idaho 790, 797, 252 P.3d 71, 78 (2011). However, we review the

---

[2] The district court affirmed the Director's order except for the Director's recalculation of the mitigation credit granted to IGWA for the water exchange agreement. This is not at issue on appeal.

4

agency record independently of the district court's decision. *Spencer v. Kootenai Cnty.*, 145 Idaho 448, 452, 180 P.3d 487, 491 (2008). A reviewing court "defers to the agency's findings of fact unless they are clearly erroneous," and "the agency's factual determinations are binding on the reviewing court, even when there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record." *A & B Irrigation Dist. v. Idaho Dep't of Water Res.*, 153 Idaho 500, 505–06, 284 P.3d 225, 230–31 (2012). "This Court freely reviews questions of law." *Vickers v. Lowe*, 150 Idaho 439, 442, 247 P.3d 666, 669 (2011).

The district court must affirm the agency action unless it finds that the agency's findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional or statutory provisions;
(b) in excess of the statutory authority of the agency;
(c) made upon unlawful procedure;
(d) not supported by substantial evidence on the record as a whole; or
(e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3); *Clear Springs Foods*, 150 Idaho at 796, 252 P.3d at 77. Even if one of these conditions is met, an "agency action shall be affirmed unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4).

Discretionary decisions of an agency shall be affirmed if the agency (1) perceived the issue in question as discretionary, (2) acted within the outer limits of its discretion and consistently with the legal standards applicable to the available choices, and (3) reached its own decision through an exercise of reason. *Haw v. Idaho State Bd. of Med.*, 143 Idaho 51, 54, 137 P.3d 438, 441 (2006). "If the agency action is not affirmed, it shall be set aside, in whole or in part, and remanded for further proceedings as necessary." I.C. § 67-5279(3).

## IV.
## ANALYSIS

The Director of IDWR has the authority to supervise the distribution of water within water districts and to adopt rules and regulations as necessary to carry out this duty. I.C. §§ 42-602, 42-603. Pursuant to this authority, IDWR promulgated the Conjunctive Management Rules ("CMRs") to provide the procedures for responding to delivery calls made by the holder of a senior-priority surface or ground water right against the holder of a junior-priority ground water right. IDAPA 37.03.11.000 and 001. Under CMR 40.01, when it is found that junior-priority ground water pumping is causing a senior right holder material injury, the Director must either:

5

(1) curtail junior-priority ground water pumping to satisfy the senior's right, or (2) "[a]llow out-of-priority diversion of water by junior-priority ground water users pursuant to a mitigation plan that has been approved by the Director." IDAPA 37.03.11.040.01. A mitigation plan is defined as:

> A document submitted by the holder(s) of a junior-priority ground water right and approved by the Director as provided in Rule 043 that identifies actions and measures to prevent, or compensate holders of senior-priority water rights for, material injury caused by the diversion and use of water by the holders of junior-priority ground water rights within an area having a common ground water supply.

IDAPA 37.03.11.010.15.

Rangen challenges the district court's partial affirmance of the Director's order conditionally approving IGWA's Fourth Mitigation Plan on three grounds. First, Rangen argues that the Director abused his discretion by deferring consideration of potential injury to other water users until the proceeding on IGWA's Application for Transfer. Second, Rangen argues that the Director erred by approving a plan with inadequate contingency provisions. Third, Rangen argues that the Director's order should be set aside because it constitutes an unlawful taking of Rangen's property. For the following reasons, we hold that the Director did not err in conditionally approving IGWA's Fourth Mitigation Plan, and we uphold the district court's partial affirmance of the Director's order.

**A. The Director did not abuse his discretion by deferring consideration of potential injury to other water users until the proceeding on IGWA's Application for Transfer.**

CMR 43.03 provides several factors "that may be considered by the Director in determining whether a proposed mitigation plan will prevent injury to senior rights." IDAPA 37.03.11.043.03. At issue here are the factors articulated in CMR 43.03.j: "Whether the mitigation plan is consistent with the conservation of water resources, the public interest or injures other water rights, or would result in the diversion and use of ground water at a rate beyond the reasonably anticipated average rate of future natural recharge." IDAPA 37.03.11.043.03.j. Here, the Director did not address the factors articulated in CMR 43.03.j in his order conditionally approving IGWA's Fourth Mitigation Plan. Instead, the Director concluded that issues of potential injury to other water users due to the transfer are most appropriately addressed in the transfer proceeding.

Rangen alleges that the Director was required to consider CMR 43.03.j before approving the Fourth Mitigation Plan and that the Director did not have discretion to defer consideration until the proceeding on IGWA's Application for Transfer. Both IDWR and IGWA contend that it was within the Director's discretion to defer consideration.

The plain language of CMR 43.03 states that the Director *may* consider the factors articulated in CMR 43.03 when determining whether to approve a mitigation plan. IDAPA 37.03.11.043.03. "This Court has interpreted the meaning of the word 'may' appearing in legislation, as having the meaning or expressing the right to exercise discretion. When used in a statute, the word 'may' is permissive rather than the imperative or mandatory meaning of 'must' or 'shall.'" *Rife v. Long*, 127 Idaho 841, 848, 908 P.2d 143, 150 (1995) (citation omitted); *see also Boyd-Davis v. Macomber Law, PLLC*, 157 Idaho 949, 954, 342 P.3d 661, 666 (2015). "Administrative rules are interpreted the same way as statutes." *Kimbrough v. Idaho Bd. of Tax Appeals*, 150 Idaho 417, 420, 247 P.3d 644, 647 (2011). A plain reading of CMR 43.03 suggests that the Director's consideration of potential injury to other water users is discretionary. However, Rangen argues that we interpreted this provision to create a mandatory obligation in *In the Matter of Distrib. of Water to Various Water Rights Held By and For the Benefit of A & B Irrigation Dist.*, 155 Idaho 640, 315 P.3d 828 (2013) [hereinafter "*A & B Irrigation Dist.*"].

In *A & B Irrigation Dist.*, this Court held that the Director abused his discretion by failing to approve a mitigation plan that provided sufficient contingency provisions. 155 Idaho at 654, 315 P.3d at 842. We stated that the CMRs provide "that the Director *must* consider several factors to determine whether the proposed plan 'will prevent injury to senior rights.'" *Id.* (emphasis added). However, we did not conclude that the Director is required to consider all of the factors listed in CMR 43.03. Rather, we held that some considerations are mandatory, such as whether a plan provides for sufficient contingency provisions. In concluding that the Director was required to determine whether a plan had sufficient contingency provisions, we focused on the language in CMR 43.03.c.

> [T]he Rules provide that the Director must consider several factors to determine whether the proposed plan "will prevent injury to senior rights," including:
>> Whether the mitigation plan provides replacement water supplies or other appropriate compensation to the senior-priority water right *when needed* during a time of shortage even if the effect of pumping is spread over many years and will continue for years after pumping is curtailed. . . . The mitigation plan *must include contingency provisions to assure protection*

> *of the senior-priority right in the event the mitigation water source becomes unavailable.*
>
> IDAPA 37.03.11.043.03.c. As the district court held, this language is unambiguous. Thus, while the Rules permit a mitigation plan to "wait and see" how much water is necessary to protect against material injury, they require that such plan identify prospective means by which water will be provided in order to prevent material injury.

*Id.* (emphasis in original).

CMR 43.03.c specifically provides that a mitigation plan *must include* contingency provisions. Unlike CMR 43.03.c, CMR 43.03.j does not include any mandatory language. Where the language of a rule is plain and unambiguous, this Court must give effect to the rule as written. *See Wheeler v. Idaho Dep't of Health and Welfare*, 147 Idaho 257, 263, 207 P.3d 988, 994 (2009) (applying the same principle to the interpretation of a statute). Under a plain reading of CMR 43.03, the Director's consideration of the potential injury factors articulated in CMR 43.03.j is discretionary.

Additionally, Rangen's assertion that the Director approved a mitigation plan without considering potential injury to other water users is inaccurate. CMR 43.02 requires the Director to consider a mitigation plan under the procedural provisions of Idaho Code section 42-222. IDAPA 37.03.11.043.02. Section 42-222 provides that an approval may be granted "in whole, or in part or upon conditions." I.C. § 42-222(1). In this case, the approval of IGWA's Fourth Mitigation Plan was expressly conditioned on the approval of its Application for Transfer. The Fourth Mitigation Plan would not have been approved if the Application for Transfer was denied because the Director found the transfer would injure other water users.

As articulated by the district court, the Director's determination that the transfer proceeding was the proper place to consider potential injury was reached through reason.

> It is understandable that the Director would, in his discretion, refrain from engaging in a full blown transfer and injury analysis in the context of the administrative proceeding on the mitigation plan under these circumstances . . . The Director's approval of the fourth mitigation plan was made in part contingent upon the approval of the transfer. Given the nature of the transfer proceeding, notice and the opportunity to be heard would need to be afforded to a lot more water users than just those who were already a party to the administrative proceeding on the fourth mitigation plan.

We agree with the reasoning of the district court and conclude that it was reasonable for the Director to defer consideration of potential injury to other water users until the transfer proceeding because it afforded more water users an opportunity to be heard.

Rangen alleges that the Director's decision to defer consideration of potential injury until the transfer proceeding was unreasonable for two reasons. First, Rangen alleges that the Director was not likely to find injury in the proceeding on IGWA's Application for Transfer because, by that time, the pipeline was already built and delivering water to Rangen. Second, Rangen argues that the injury analysis in a transfer proceeding is different than the analysis required under CMR 43.03.j because the Director was not required to consider the effect of "aquifer mining."

As to the first argument, Rangen alleges that the Director's decision to defer the injury determination effectively made the approval of the transfer application a foregone conclusion. Rangen believes that there was no way that the Director would approve the Fourth Mitigation Plan then deny the transfer application after the pipeline had already been constructed and was delivering water. It is true that water was being piped to the Rangen facility before the Application for Transfer was approved. While the application was pending, IGWA obtained approval to rent water from the Water Supply Bank to pump to the Rangen facility. Rangen alleges that the water bank rental enabled pumping to begin under the Fourth Mitigation Plan without an analysis of CMR 43.03.j factors. However, in approving the rental, the Director specifically considered the potential injury to other right holders. Whether the Director erred in approving the rental is not an issue currently before the Court as Rangen's Petition to Revoke Rental Agreement is currently pending before the Director.

Additionally, it is unclear how Rangen would have standing to speak on behalf of other water users. As discussed above, deferring consideration of potential injury until the transfer proceeding gave more water users an opportunity to be heard. If other water users felt that the proceeding on the Application for Transfer was biased by the construction and use of the pipeline, they had an opportunity to raise that issue in the transfer proceeding.

Rangen's argument also fails to consider the time constraints at issue in this proceeding. Under the curtailment order, junior-priority ground water pumpers were required to provide Rangen with 3.4 cfs of water in the first year. After considering the mitigation credit for IGWA's First Mitigation Plan, the Director found that there was a deficiency of 2.2 cfs from January 19, 2015 to March 31, 2015. In order to protect Rangen's rights, the Director required that the Fourth Mitigation Plan be completed and provide 2.2 cfs of water to Rangen before January 19, 2015 or junior-priority ground water pumpers would face curtailment. The order approving the Fourth Mitigation Plan was entered on October 29, 2014, leaving IGWA less than three months to

satisfy the 2.2 cfs mitigation deficiency. Allowing construction of the pipeline before approval of the Application for Transfer was reasonable under these circumstances. IGWA bore the risk that the transfer application would not be approved. Additionally, Rangen points to no evidence in the record tending to show that allowing construction and use of the pipeline biased the Director's injury analysis in the transfer proceeding.

Second, Rangen argues that the injury analysis conducted in the transfer proceeding was pursuant to Idaho Code section 42-222, and, unlike CMR 43.03.j, section 42-222 does not require that the director consider the effect of "aquifer mining." Rangen argues that the Director failed to consider that the Fourth Mitigation Plan does not address the impact of junior-priority ground water pumping on the ESPA or ensure that aquifer withdrawal does not exceed recharge. CMR 43.03.j provides that the Director may consider whether the mitigation plan "would result in the diversion and use of ground water at a rate beyond the reasonably anticipated average rate of future natural recharge." IDAPA 37.03.11.043.03.j. However, as discussed above, the evaluation of that factor falls within the Director's discretion. Additionally, this factor is largely irrelevant as the Magic Springs Project does not involve withdrawing ground water from the aquifer and, therefore, does not result in the diversion and use of ground water. In effect, Rangen is asking this Court to hold that the Director is required to analyze whether a mitigation plan prevents withdrawal of water from the ESPA from exceeding recharge even when the plan does not involve withdrawing water from the aquifer. There is no such requirement.

We hold that the Director acted within his discretion in determining that the transfer proceeding was the more appropriate forum to address potential injury to other water users because it afforded more water users an opportunity to be heard. Rangen and other water right holders had a full and fair opportunity in that proceeding to present argument as to how the transfer of water from Magic Springs to the Rangen facility might injure other water users. The approval of IGWA's Fourth Mitigation Plan was expressly conditioned on approval of the Application for Transfer. Therefore, we hold that the Director did not abuse his discretion by deferring consideration of potential injury to other water users until the transfer proceeding, and we uphold the district court's affirmance of his decision.[3]

---

[3] On appeal, Rangen makes several arguments challenging the Director's finding of no injury in his order approving IGWA's Application for Transfer. Although Rangen sought judicial review of the Director's conclusion that the transfer would not cause injury, Rangen did not appeal the district court's affirmance of the Director's order.

**B. The Director did not approve a mitigation plan with inadequate contingency provisions.**

As provided in CMR 43.03.c, "[a] mitigation plan must include contingency provisions to assure protection of the senior-priority right in the event the mitigation water source becomes unavailable." IDAPA 37.03.11.043.03.c; *see also A & B Irrigation Dist*., 155 Idaho at 654, 315 P.3d at 842. In considering whether contingency provisions are sufficient, the Director may consider "[w]hether the mitigation plan provides replacement water supplies or other appropriate compensation to the senior-priority water right when needed during a time of shortage." IDAPA 37.03.11.043.03.c.

The Director's order approving the Fourth Mitigation Plan expressly provided that "IGWA is required to purchase an insurance policy for the benefit of Rangen to cover any losses of fish attributable to the failure of the temporary or permanent pipeline system to the Rangen Facility." Additionally, the district court found that, in the event mitigation water under the fourth plan becomes unavailable, curtailment is a contingency to address the mitigation deficiency. The district court reasoned that in prior cases where the court found a mitigation plan did not contain adequate contingencies, the Director had expressly stated that he would not curtail junior-priority ground water pumping if mitigation water became unavailable. Additionally, in each of those cases there was no secondary mitigation source to address a mitigation deficiency. In the present case, the district court found that the Director had not stated that junior-priority ground water pumping would not be curtailed if mitigation water became unavailable. The district court also concluded that the insurance requirement provided a secondary mitigation source. The district court ultimately held that curtailment coupled with insurance was adequate to satisfy CMR 43.03.c.

Rangen first argues that curtailment is not a contingency, but rather, is the natural and legal consequence that occurs when mitigation is not provided. Additionally, Rangen contends that curtailment would not be a sufficient contingency because it takes years for the benefit of curtailment to be realized, and curtailment would not immediately provide the water that Rangen would have received under the mitigation plan.

---

Therefore, whether the Director erred in concluding that the transfer would not injure other water users is not properly before this Court. *See* I.R.C.P. 84(t)(2)(a).

11

Generally, the consequence of failing to operate in compliance with an approved mitigation plan is curtailment of junior-priority use. IDAPA 37.03.11.040.05. In this case, the Director has consistently ordered that the mitigation plans proposed by IGWA must deliver the water required or junior-priority ground water pumpers will face curtailment. If IGWA fails to meet its mitigation obligation, either through the Fourth Mitigation Plan or another approved mitigation plan, junior-priority ground water pumping will be curtailed. Although curtailment alone may not be able to fully protect Rangen's rights, the insurance requirement coupled with curtailment is sufficient. Pursuant to the Director's order, IGWA obtained an insurance policy to compensate Rangen in the event that the pipeline fails. CMR 43.03.c specifically recognizes that a contingency provision may provide either replacement water or *other appropriate compensation* during a time of shortage. IDAPA 37.03.11.043.03.c. Rangen argues that the Director is not authorized to award a senior user monetary damages if a mitigation plan is breached. However, as discussed above, the consequence of IGWA failing to meet its mitigation obligation is curtailment, not a monetary award. The purpose of the insurance requirement is to ensure that Rangen is compensated if the pipe system fails—not as an alternate remedy to curtailment. It is also worth noting that the Director required that IGWA provide redundant power and pumping systems to reduce the risk of a pipeline failure.

Rangen makes several arguments challenging the sufficiency of the insurance policy obtained by IGWA. However, this is not the appropriate forum for Rangen to raise the adequacy of the insurance purchased by IGWA and whether it complies with the Director's order. As IDWR and IGWA argue, these issues should be raised with the Director as they concern implementation of the Director's requirement, not whether insurance itself is an adequate contingency under CMR 43.03.c. As Rangen has not brought these issues before the Director, there is no decision for us to review.[4] I.C. § 42-1701A(4) ("Any person who is aggrieved by a *final decision or order of the director* is entitled to judicial review.") (emphasis added).

---

[4] Rangen argues that the Director's order is fatally flawed because it lacked specificity as to what type of insurance IGWA was required to purchase. Rangen argues that the Director had an independent duty to review the insurance purchased by IGWA and determine whether it was sufficient before IGWA began piping water to Rangen. However, Rangen cites no authority that mandates that the Director scrutinize the insurance purchased where no party filed a challenge claiming the insurance was inadequate.

Lastly, Rangen argues that the insurance contingency is insufficient because it only provides compensation for the loss of fish stock.[5] Rangen alleges that if the pipeline stops delivering water it will suffer lost profits, exposure to liability for breach of contract, and loss of goodwill. Additionally, Rangen contends that it will have to make substantial capital investments in the facility to gear up for delivery of water through the Magic Springs Project and it would not be able to recoup those losses if the pipeline did not deliver water for a significant period of time. IGWA contends that whether Rangen would be compensated for these types of losses depends on the amount of coverage under the policy, an issue Rangen has also not raised with the Director. The Director's requirement that IGWA purchase insurance "to cover any losses of fish attributable to the failure of the temporary or permanent pipeline system" is adequate. Although the Director does not expressly state that the insurance policy must cover consequential damages flowing from the loss of fish stock, the order can reasonably be interpreted that way. Additionally, the insurance policy actually purchased would cover such losses. The insurance certificate submitted by IGWA expressly states that it covers "losses from Rangen, Inc. due to failure of the pump system and supply of spring water resulting in loss of fish stock." The insurance policy has a coverage limit of $2,000,000. Whether the $2,000,000 coverage limit is adequate to cover such losses is an issue that needed to be raised with the Director before it would be addressed by this Court.

We affirm the conclusion of the district court that the Director did not approve a mitigation plan with inadequate contingency provisions because, in this case, curtailment and insurance are adequate contingencies to satisfy CMR 43.03.c.

**C. The Director's order did not constitute an unlawful taking.**

"Article I, section 14 of the Idaho Constitution and the Fifth Amendment of the U.S. Constitution both prohibit the government from taking private property for public use without just compensation." *Sopatyk v. Lemhi Cnty.*, 151 Idaho 809, 816, 264 P.3d 916, 923 (2011) (footnotes omitted). Rangen's takings argument focuses on the provision in the Director's order which states: "If the Fourth Mitigation Plan is rejected by Rangen or Rangen refuses to allow construction in accordance with an approved plan, IGWA's mitigation obligation is suspended."

---

[5] Rangen also contends that the Fourth Mitigation Plan did not address who would be responsible for the construction, operation, and maintenance of the pipeline. However, the Director's order specifically states that IGWA is responsible for building, operating, maintaining, and monitoring the temporary and permanent pipelines.

Rangen alleges that the foregoing provision constitutes an unlawful taking because Rangen was given a choice between the enforcement of the priority of its water rights or the grant of a property right to IGWA.

The district court held that the provision at issue did not effectuate a taking of Rangen's property or mandate that Rangen provide IGWA with an easement or access for the pipeline. Rather, the district court interpreted the provision as recognizing that condemnation proceedings would have to be initiated if Rangen refused to allow the pipeline on its property, which would affect the timeline for mitigation. Additionally, the district court found that the record was clear that no unlawful taking had occurred. Rangen and various water districts IGWA represents had entered into a license agreement where, in exchange for valuable consideration, Rangen granted the districts a license to install, operate, and maintain the pipeline on its property. Additionally, because of the revocable nature of the agreement, the water districts also initiated condemnation proceedings against Rangen seeking two easements on Rangen's property.

On appeal, Rangen argues that the district court erred in concluding that the language of the order did not require Rangen to grant IGWA an easement or risk losing the water it was entitled to. Additionally, Rangen contends that the district court should not have considered the license agreement because the Director's order forced Rangen to enter into the agreement.

Even if we interpreted the Director's order to require Rangen to grant IGWA an easement on its property, that alone would not amount to an unlawful taking. Article I, section 14 of the Idaho Constitution provides that the "use of land for . . . rights of way for the construction of canals, ditches, flumes or pipes, to convey water to the place of use for any useful, beneficial or necessary purpose . . . is hereby declared to be a public use." "Private property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid." Idaho Const. art. I, § 14. Here, it would be within the State's eminent domain power to obtain a right of way for the construction of the pipeline.

Rangen has made no allegation that it was not provided just compensation. Additionally, whether Rangen received just compensation for easements on its property is not ripe for review as the condemnation proceedings are still pending before the district court. Rangen will have an opportunity to appeal such a determination once a final judgement is entered in that proceeding. *See* I.A.R. 11(a).

14

We affirm the district court's conclusion that the Director's order did not constitute an unlawful taking of Rangen's property.

## V.
## CONCLUSION

We affirm the district court's partial affirmance of the Director's order conditionally approving IGWA's Fourth Mitigation Plan.

Justices EISMANN, BURDICK, and HORTON, and Justice Pro Tem WALTERS CONCUR.