# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48353

| | | |
|---|---|---|
| ACCESS BEHAVIORAL HEALTH, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | Boise, May 2022 Term |
| | ) | |
| v. | ) | Opinion filed: September 16, 2022 |
| | ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Michael J. Reardon, District Judge.

The judgment of the district court is <u>affirmed</u>.

Cozakos & Centeno, PLLC, Boise, for Appellant. Shelly Cozakos argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Chelsea E. Kidney argued.

———————————

ZAHN, Justice.

Access Behavioral Health appeals from the district court's judgment upholding an order of the Idaho Department of Health and Welfare that demanded recoupment of Medicaid payments made to Access. We affirm the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

This case concerns the Department's efforts to recoup overpayments made to Access for mental health services provided to Medicaid participants in 2012 and 2013. The Department sought to recoup certain payments made to Access because it failed to meet the Department's documentation requirements.

1

As an approved provider in the Idaho Medicaid Program, Access was required to sign an "Idaho Department of Health and Welfare Medicaid Provider Agreement." By signing the Agreement, Access acknowledged that it would "document each item or service for which Medicaid reimbursement is claimed, at the time it is provided, in compliance with documentation requirements of Idaho Code, § 56-209h(3), as amended, applicable rules, and this Agreement." The Agreement also required Access to comply with the April 2013 Ambulatory Health Care Facility Provider Handbook, which sets forth recordkeeping requirements and includes references to statutes and Idaho Administrative Procedure Act ("IDAPA") rules.

The Handbook requires the provider to record treatment notes identifying the services provided by using Current Procedural Terminology ("CPT") codes or Healthcare Common Procedure Coding System ("HCPCS") codes.[1] It also required mental health providers to "maintain medical records on all services provided to Medicaid participants," including recording the specific treatment provided, the duration of the treatment, the identity of the person providing the treatment, and the signatures of the medical professionals who provided the treatment. In 2012 and 2013, IDAPA Rule 16.03.09.716.05 required mental health providers to maintain specific records on all services provided to Medicaid participants. Further, IDAPA Rule 16.05.07.101.01 required providers to "generate documentation at the time of service sufficient to support each claim or service, and as required by rule, statute, or contract."

1. <u>The November 8, 2018 administrative action notice.</u>

On June 8, 2016, pursuant to its authority under Idaho Code section 56-209h to conduct audits of provider billings, the Department requested Access to provide billing records for psychotherapy and pharmacologic management services billed from January 1, 2013, through August 30, 2013. The Department reviewed 1607 line items submitted by Access for services billed under CPT code 90832 (psychotherapy) and HCPCS code H0034 (pharmacologic management). In each instance, Access billed Medicaid under both codes for services provided to the same patient on the same day. The audit lasted approximately two and a half years. During this time, the Department and Access repeatedly communicated about the audit and the Department sought additional information related to the audited records.

---

[1] The CPT handbook produced by the American Medical Association identifies various billing codes and discusses the type of billing detail required. Similarly, the HCPCS, which is produced by the Centers for Medicare and Medicaid Services, is a collection of standardized codes representing different medical services.

On November 8, 2018, the Department issued an administrative action notice, which determined that while Access had submitted sufficient documentation to support its billings for pharmacologic management, it failed to provide sufficient documentation to support its psychotherapy billings for 1560 separate line items. The Department identified documentation deficiencies related to:

(1) Documentation requirements not met;
(2) Documentation did not support services billed;
(3) Incomplete documentation;
(4) No documentation[.][2]

The Department concluded the documentation deficiencies violated IDAPA Rule 16.03.09.716 and the Handbook. The notice cited specific examples for each of the deficiencies and included a spreadsheet identifying the specific deficiencies associated with each line item at issue. For instance, six of the billed services included treatment plan reviews but did not mention medication management or psychotherapy. Additionally, in eighteen of the services billed for psychotherapy and pharmacological management, the medical provider failed to complete the entire required template form. Further, Access had not provided any documentation for twenty-six of the services billed under psychotherapy and pharmacological management. As a result of the deficiencies identified in the 1560 line items, the Department determined that it had overpaid Access in the amount of $66,257.65 and demanded recoupment of the funds.[3]

2.  <u>The November 21, 2018 administrative action notice.</u>

On April 10, 2014, the Department requested documentation from Access to support billings for forty patients between January 1, 2012, through August 30, 2013. The Department focused on CPT billing codes 90885 (psychiatric evaluation of records) and 90889 (preparation of a report for others) and utilized probability sampling from all claims submitted during the identified timeframe to randomly select forty client treatment notes for review. The audit lasted approximately four and a half years. During this time, the Department and Access repeatedly communicated about the audit and the Department sought additional information related to the audited records.

---

[2] The administrative action also included two other categories of issues concerning inaccurate documentation and services not provided. In advance of the hearing the Department withdrew its claim related to inaccurate documentation and Access stipulated to recoupment for "services not provided."

[3] The Department also issued a civil monetary penalty of $18,340.69, but later withdrew the penalty.

On November 21, 2018, the Department issued an administrative action notice, which found no issues with Access's billings for reviewing psychiatric records but identified eleven deficiencies with its billings seeking payment for preparation of a report for other individuals, agencies, or other insurance carriers. Specifically, Access failed to document that it prepared a report for other physicians, agencies, or insurance carriers on the service date. The Department concluded the deficient documentation violated IDAPA Rule 16.03.09.716 and the Handbook. The Department determined the noncompliant billings indicated an overpayment of $534.05 and extrapolated the findings from the sample to arrive at an overpayment of $18,467 for all billings that Access submitted for CPT code 90889 between January 1, 2012, and August 30, 2013. The Department demanded recoupment of the funds from Access.[4]

Access filed a petition with the Department to appeal both recoupment assessments.

## B. Procedural History

Access's appeal proceeded before a hearing officer from the Fair Hearings Unit of the Idaho Attorney General's Office. Access had the burden of establishing, by a preponderance of the evidence, that it was entitled to the payments it received. IDAPA 16.05.03.133; IDAPA 16.05.03.134. Before the hearing officer, Access argued that the Department did not have legal authority to recoup the payments, that Access's documentation was sufficient, that the Department's recoupment demand failed to properly apply federal law, and that the doctrine of laches barred the Department's recoupment demand. On September 10, 2019, after a six-day hearing, the hearing officer issued a 30-page written preliminary order, which affirmed the Department's administrative actions and concluded that the Department was entitled to recoupment of the overpayments. Access did not request the Department to review the preliminary order and it became final on September 24, 2019. Access timely petitioned for judicial review pursuant to Idaho Code section 67-5273.

Access's petition for judicial review repeated many of the same issues and arguments that it raised before the hearing officer. On August 14, 2020, the district court issued a written order affirming the hearing officer's order. Access timely appealed from the district court's order.

## II. ISSUES ON APPEAL

1. Whether the district court properly affirmed the hearing officer's determination that the Department had legal authority to issue a recoupment demand to Access?

---

[4] The Department issued a civil monetary penalty of $133.51, but later withdrew the penalty.

4

2. Whether the district court properly affirmed the hearing officer's determination that Access failed to establish an entitlement to payment?

3. Whether the district court properly affirmed the hearing officer's determination that the federal False Claims Act's materiality requirement did not apply to the Department's recoupment demand?

4. Whether the district court properly affirmed the hearing officer's determination that the doctrine of laches did not bar the Department's recoupment demands?

5. Whether Access is entitled to attorney fees and costs on appeal?

## III.  STANDARD OF REVIEW

When reviewing an appeal from a district court's decision acting in its appellate capacity under IDAPA, this Court reviews "the decision of the district court to determine whether it correctly decided the issues presented to it." *Rangen, Inc. v. Idaho Dep't of Water Res.*, 160 Idaho 251, 255, 371 P.3d 305, 309 (2016) (citing *Clear Springs Foods v. Spackman*, 150 Idaho 790, 797, 252 P.3d 71, 78 (2011)). This Court reviews the agency record independent of the district court's decision and "defers to the agency's findings of fact unless they are clearly erroneous, and the agency's factual determinations are binding on the reviewing court, even when there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record." *Id.* at 255, 371 P.3d at 309 (internal quotation marks omitted). "Statutory interpretation is a question of law over which this Court exercises free review." *Estate of Stahl v. Idaho State Tax Comm'n*, 162 Idaho 558, 562, 401 P.3d 136, 140 (2017) (citation omitted).

> When reviewing a petition for judicial review,
> The district court must affirm the Department's action, "unless the court determines that the agency's findings, inferences, conclusions or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). Regardless of whether the Department's action meets the standard set forth in Idaho Code § 67-5279(3), the district court must affirm the Department's action unless the "substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4). It is the burden of the party contesting the Department's decision to show how the Department erred in a manner specified under I.C. § 67-5279, and to establish that a substantial right has been prejudiced.

*Wheeler v. Idaho Dep't of Health & Welfare*, 147 Idaho 257, 260, 207 P.3d 988, 991 (2009).

## IV.  ANALYSIS

**A. The Department had legal authority to issue a demand for recoupment from Access.**

The hearing officer determined that the documentation requirements of the IDAPA rules for Mental Health Services constituted "conditions of payment" for purposes of Idaho Code section 56-209h(5), and if Access violated those rules, the Department had authority, pursuant to section 56-209h(5), to recoup overpayments made to Access. Next, the hearing officer deferred to the Department's interpretation of its IDAPA rules governing Medicaid providers after determining that the Department's recoupment demand was "reasonable and [fell] within its discretionary authority as the administrators [sic] of the Medicaid program." Applying deference to the Department's interpretation of its own rules, the hearing officer concluded that IDAPA Rule 16.03.09.711.04 also gave the Department authority to recoup overpayments if a provider failed to meet documentation requirements. The hearing officer further found that the Agreement gave the Department contractual authority to recover overpayments.

The district court affirmed the hearing officer's decision, concluding that the Department had statutory authority to recoup overpayments under Idaho Code section 56-209h for violations of IDAPA rules governing Medicaid providers. The district court determined that Access failed to preserve its argument that the hearing officer erred when she granted deference to the Department's interpretation of IDAPA Rule 16.03.09.711.04, and the hearing officer did not err in construing IDAPA Rule 16.03.09.711.04 as an independent grant of authority to the Department to recoup overpayments. The district court did not consider whether the Agreement gave the Department contractual authority to recoup, given its conclusions that section 56-209h and rule 16.03.09.711.04 granted the Department recoupment authority.

On appeal to this Court, Access asserts that the Department lacked legal authority to recoup overpayments, that the Department's interpretation of its rules was not entitled to deference, and that IDAPA Rule 16.03.09.711.04 was repealed at the time of the recoupment request and, therefore, could not serve as a basis for recoupment. Finally, Access contends that the Department did not establish contractual authority to recoup overpayments.

The Department argues that Idaho Code section 56-209(h)(5) provided it with the authority to recoup overpayments from Access for violating the Department's rules, and that its interpretation of its IDAPA rules is entitled to deference. The Department maintains that its right to recoupment accrued when Access billed for services provided and, therefore, the pre-amendment version of IDAPA Rule 16.03.09.711.04 applied to its recoupment demand. Finally,

the Department argues that it established contractual authority to recoup overpayments from Access.

1. <u>Idaho Code section 56-209h(5) grants the Department authority to recoup payments for violating statutory, regulatory, or contractual requirements that contain conditions of payment.</u>

Access argues that Idaho Code section 56-209h(5) limits recoupment to violations of statutory, regulatory, or contractual provisions that are expressly labeled a "condition of payment." Access contends that none of the rules cited in the Department's administrative action notices include the words "condition of payment" and, therefore, the Department did not have authority to recoup for violations of those rules. The Department argues the statute does not require IDAPA rules to contain the phrase "condition of payment" to constitute a basis for recoupment. The Department contends that if a rule contains a requirement that must be met before payment is proper, it is a "condition of payment" for purposes of section 56-209h(5).

Resolution of this issue requires us to examine the language of section 56-209h(5). This Court freely reviews questions of statutory interpretation. *Saint Alphonsus Reg'l Med. Ctr. v. Raney*, 163 Idaho 342, 345, 413 P.3d 742, 745 (2018).

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. . . . When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*Id.* (quoting *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013)).

Idaho Code section 56-209h(5) unambiguously provides that the Department may recover payments when a provider fails to satisfy a "condition of payment *contained in* rule, regulation, statute, or provider agreement." I.C. § 56-209h(5) (emphasis added). The statute requires only that the condition of payment be contained in a rule, not that the rule include the words "condition of payment." A condition is defined as "a premise upon which the fulfillment of an agreement depends." *Condition*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/condition (last visited July 7, 2022). If a rule, regulation, statute, or provider agreement requires a healthcare provider to meet certain requirements in order to receive payment from Medicaid, the requirements become conditions of payment and section 56-209h(5) allows the Department to recoup for the failure to meet those requirements. Accordingly, we conclude that the plain language of Idaho Code section 56-209h gives the Department authority to

recoup overpayments in the event Access violated a condition of payment contained in a rule, regulation, statute, or the provider agreement.

2. <u>The provisions of IDAPA Rule 16.03.09.716 and the Handbook cited in the Department's administrative action notices constituted conditions of payment.</u>

We now examine whether specific provisions cited in the Department's administrative action notices constituted conditions of payment for purposes of section 56-209h(5). The Department sought recoupment based on its determination that Access's documentation did not meet the requirements of IDAPA Rule 16.03.09.716 and the Handbook. It maintains that the Agreement required Access to comply with these provisions in order to receive payment for services provided. During their testimony before the hearing officer, the co-owners of Access conceded that Access agreed to abide by the terms and conditions contained in the Agreement.

As a preliminary matter, Access argues on appeal that the Agreement was not properly admitted into evidence at the hearing before the hearing officer. The administrative record reveals otherwise. Following the close of evidence at the hearing, the parties and hearing officer discussed whether the Agreement had been admitted. The Department asked that it be admitted and Access objected. The hearing officer indicated that she would review the record to decide the issue. The hearing officer subsequently noted the exhibit as admitted in her written decision.

Turning to the Agreement, it notified providers of compliance and billing requirements:

As a condition of participation in Medicaid, the Provider agrees as follows:

**1. Compliance.**

To provide services in accordance with all applicable federal laws and provisions of statutes, state rules, and federal regulations governing the reimbursement of services and items under Medicaid in Idaho, including IDAPA 16.03.09 – "Medicaid Basic Plan Benefits," IDAPA 16.03.10 – "Medicaid Enhanced Plan Benefits," IDAPA 16.03.13 – "Consumer Directed Services," IDAPA 16.03.17 – "Medicare/Medicaid Coordinated Plan Benefits," and IDAPA 16.03.18 – "Medicaid Cost Sharing," as amended; the current applicable Medicaid Provider Handbook; any Additional Terms attached hereto and incorporated by reference; and any instructions contained in provider information releases or other program notices.

. . .

**5. Accurate Billing.**

To certify by the signature of the Provider or designee. . .that the items or services claimed. . .were documented at the time they were provided and were provided in

8

accordance with professionally recognized standards of health care, applicable Department rules, and this Agreement. The Provider will be solely responsible for the accuracy of the claims submitted, and shall immediately repay the Department for any items or services the Department or the Provider determines were not properly provided, documented, or claimed. . .

Paragraph 1 of the Agreement required Access to comply with all applicable state statutes and rules and portions of the Handbook governing reimbursement of services, which included documentation requirements. Paragraph 5 notified Access that it would be required to reimburse the Department for any services that were not properly documented. The Department's administrative action notices advised Access that its documentation failed to comply with IDAPA Rule 16.03.09.716 and certain portions of the Handbook. The Handbook includes substantially the same documentation requirements as IDAPA 16.03.09.716.05 (2013), which provides in pertinent part:

Mental Health Clinic Record-Keeping Requirements

a. Maintenance. Each mental health clinic will be required to maintain records on all services provided to Medicaid participants.

. . .

c. Requirements. The records must:

i. Specify the exact type of treatment provided; and

ii. Who the treatment was provided by; and

iii. Specify the duration of the treatment and the time of day delivered; and

iv. Contain detailed records which outline exactly what occurred during the therapy session or participant contact documented by the person who delivered the service; and

v. Contain the legible, dated signature, with degree credentials listed, of the staff member performing the service.

The Agreement, therefore, unambiguously made compliance with the requirements of IDAPA Rule 16.03.09.716 and the Handbook conditions of payment.

We affirm the district court's determination that the Department had the legal authority, pursuant to section 56-209h(5), to recoup overpayments from Access based on violations of IDAPA 16.03.09.716 and the Handbook. Given this conclusion, we need not address the parties' remaining arguments concerning administrative deference and whether IDAPA Rule 16.03.09.711.04 and the Handbook also granted the Department authority to recoup overpayments from Access.

**B. Access failed to establish that it was entitled to payment.**

    1.  The November 8, 2018 administrative action notice.

The hearing officer determined that Access failed to satisfy the documentation requirements set forth in IDAPA Rule 716 and the Handbook because its documentation did not support the services billed, was incomplete, and was sometimes missing altogether. The district court affirmed the hearing officer's findings and explained that it would not reweigh the evidence and testimony.

Access argues that the hearing officer's decision was not supported by substantial and competent evidence in the record because the hearing officer did not review the treatment notes for all 1560 line items cited in the November 8 notice and failed to give more weight to the testimony of its treatment providers that they prepared treatment notes according to industry standards. The Department argues that the hearing officer's conclusion is supported by substantial evidence in the record as a whole.

When determining whether the agency's decision was supported by "substantial evidence in the record as a whole," this Court will not substitute its judgment for that of the hearing officer regarding the weight of the evidence on questions of fact. *Wohrle v. Kootenai Cnty.*, 147 Idaho 267, 274, 207 P.3d 998, 1005 (2009). The hearing officer's "factual determinations are binding on the reviewing court, even where there is conflicting evidence, so long as the determinations are supported by substantial and competent evidence." *Id.* "Substantial and competent evidence is relevant evidence which a reasonable mind might accept to support a conclusion." *Lamar Corp. v. City of Twin Falls*, 133 Idaho 36, 42–43, 981 P.2d 1146, 1152–53 (1999) (internal quotation marks omitted).

We find no merit in Access's arguments concerning the November 8 notice. The hearing officer considered testimony from ten witnesses during the six-day hearing and reviewed an extensive record, which included hundreds of pages of treatment notes. The hearing officer wrote a 30-page order which considered and analyzed Access's claims in detail, including reviewing several treatment notes and assessing the witnesses' testimony. Idaho Code section 67-5279(1) directs this Court that it "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Thus, we will not second-guess the hearing officer's decision concerning how much weight to give the conflicting testimony of Access's providers. The fact that

Access disagrees with the lesser weight the hearing officer afforded their testimony does not establish a lack of substantial evidence in the record to support the hearing officer's decision.

Regarding the hearing officer's review of the treatment records, Access bore the burden of establishing a right to payment. Despite having the Department's spreadsheet identifying the specific deficiencies in each of the claims at issue, Access only provided general testimony about the deficiencies. It was Access's burden to direct the hearing officer to specific evidence in the record contradicting the Department's view of the evidence and establishing an entitlement to payment. Access failed to do so below and thus failed to carry its burden. On appeal, Access has failed to specify findings that were not supported by substantial evidence in the record as a whole. We affirm the district court's decision affirming the hearing officer's determination that Access failed to demonstrate a right to payment.

2. The November 21, 2018, administrative action notice.

The hearing officer determined that the Department "complied with the regulations governing its use of probability sampling and extrapolation." Additionally, the hearing officer found that Access failed to establish a right to payment.

The district court determined that the hearing officer properly "weighed the opinions of conflicting witnesses and concluded that the sampling was not in error." Further, the district court explained that Access has not "pointed to anything about the Hearing Officer's conclusion that [the district court] could find was arbitrary, capricious or an abuse of discretion, or that was not supported by substantial competent evidence."

Access argues that the hearing officer's order was not supported by substantial and competent evidence because the Department's probability sampling did not conform to generally accepted standards. Specifically, Access points to the Department's failure to document the random seed used to generate the sample and argues that this failure invalidates the sample. Further, Access argues that the billing documents at issue complied with all relevant regulations and rules.

The Department maintains that the hearing officer's decision is supported by substantial and competent evidence because the Department adhered to widely accepted statistical standards. Additionally, the Department contends that the lack of a random seed did not invalidate the sample because the Department's expert was able to replicate the random sample without the use of the

11

random seed. Finally, the Department argues that the hearing officer properly determined that Access failed to establish a right to payment.

Idaho's courts have not previously addressed whether probability sampling and extrapolation are acceptable methods for identifying and computing Medicaid overpayments. Other jurisdictions, however, have determined that probability sampling and extrapolation are recognized methods for conducting such audits. *See Bircumshaw v. State*, 380 P.3d 524, 533 (Wash. Ct. App. 2016); *Chaves Cnty. Home Health Serv., Inc. v. Sullivan*, 931 F.2d 914, 922 (D.C. Cir. 1991). "An extrapolation of findings based on an audit using a certified valid statistical sampling method is presumed to be an accurate determination of the total overpayments made, in the absence of expert testimony or other evidence submitted by the provider at a hearing." *Fast Help Ambulette, Inc. v. New York State Dep't of Health*, 156 N.Y.S.3d 267, 270 (N.Y. App. Div. 2021) (internal quotation marks and alterations omitted).

On the issue of the reliability of the Department's probability sampling and extrapolation, Access first faults the hearing officer for relying on the testimony of the Department's statistical expert rather than Access's expert. Although Access's expert disagreed with the Department's expert on certain points, that does not mean the hearing officer's decision to afford greater weight to the Department's expert was unsupported by substantial and competent evidence. It is not this Court's role to re-weigh conflicting testimony in the agency record. *See PacifiCorp v. Idaho State Tax Comm'n*, 153 Idaho 759, 768, 291 P.3d 442 451 (2012); I.C. § 67-5279(1). While there was disagreement between the expert witnesses, it was within the hearing officer's discretion to weigh the testimony and decide who she believed. Substantial evidence in the record as a whole supported her decision.

Next, Access argues that the Department's failure to document the random seed invalidated the sample according to the Medicaid Program Integrity Manual ("MPIM"). The MPIM, written by the federal Centers for Medicare & Medicaid Services, provides guidance to State agencies when performing sampling and extrapolations. The MPIM states, "the contractor shall document the known seed value if a computer algorithm is used." MPIM Chapter 8, § 8.4.4.2. However, the MPIM also provides that the failure to follow one or more of the requirements within the MPIM does "not necessarily affect the validity of the statistical sampling or the projection of the overpayment." MPIM Chapter 8, § 8.4.1.1. Instead, a challenger "must demonstrate actual error in the methodology that affects the overpayment amount." *Id.*

On this point, Michelle Weist, the Department's expert statistician, admitted that the Department failed to document the seed value as required by the MPIM section 8.4.4.2, but clarified that the missing random seed value did not affect her ability to verify the Department's sampling. Access failed to point to any other issue with the sampling, aside from the Department's failure to document the random seed used to generate the sample. The testimony of the Department's expert statistician established that the failure to document a random seed value did not invalidate its statistical sampling. Therefore, the hearing officer's decision that the Department's random sample was valid, despite its failure to document the random seed value, is supported by substantial evidence in the record as a whole. In short, we affirm the district court's conclusion that the hearing officer's decision that the Department's probability sampling and extrapolation were valid was supported by substantial evidence in the record as a whole.

Regarding its claimed entitlement to payment, Access argues that the billing documents at issue complied with all relevant regulations and rules. The second audit only found deficiencies for documents billed under CPT code 90889. Pursuant to the 2012 and 2013 CPT handbooks, the CPT code 90889 may be billed when the provider prepares a report of the "patient's psychiatric status, history, treatment, or progress (other than for legal or consultative purposes) for other physicians, agencies, or insurance carriers." IDAPA Rule 16.05.07.101.01 requires providers to generate documentation at the time of service sufficient to support each claim or service. The Department contended that Access's billings were noncompliant because there was no evidence that, at the time it billed the CPT code, Access had prepared a report of the patient's status for another physician, agency, or insurance carrier. Access contends that the documentation contained the patient's psychiatric status, history, treatment, or progress and that was sufficient support for CPT code 90889.

The hearing officer concluded the documentation was noncompliant, based in part on testimony from the Department's auditor that none of the documents appeared to have been prepared as a report for another physician, agency, or insurer. The hearing officer explained that a "[r]eview of the documents themselves do [sic] not sufficiently show that a report was prepared *on the date of service* for other physicians, agencies, or insurance carriers." Again, Access asks this Court to reweigh the evidence, which we will not do. *See PacifiCorp*, 153 Idaho at 768, 291 P.3d at 451; I.C. § 67-5279(1). The hearing officer cited substantial evidence in the record as a whole to support her decision. We affirm the district court's decision affirming the hearing

13

officer's determination that Access failed to demonstrate a right to payment for the claims at issue in the November 21 administrative action notice.

## C. The False Claims Act's materiality requirement does not apply to this case.

The hearing officer determined that Access failed to establish that the materiality element of the federal False Claims Act ("FCA") applied to the Department's administrative action notices. The hearing officer noted that the Idaho Legislature did not include a materiality element in recoupment cases, despite doing so for cases involving civil penalties and termination of Medicaid provider agreements. The district court affirmed the hearing officer's decision.

Access argues that the hearing officer erred when she failed to require the Department to demonstrate that Access's documentation violations were material, as required by the FCA. Access does not explain how this constitutes a violation of section 67-5279(3). This Court will not vacate the Department's action unless Access establishes a violation of section 67-5279(3). *Hawkins v. Bonneville Cnty. Bd. of Comm'rs*, 151 Idaho 228, 232, 254 P.3d 1224, 1228 (2011). The district court construed Access's argument as contending that the hearing officer's decision was arbitrary, capricious, or an abuse of discretion under section 67-5279(3)(e). We will do the same.

Access asserts that "while the FCA is not directly at issue, the Department is relying on substantive provisions [of] IDAPA chapter 16.05.07, which is the local counterpart for fraudulent Medicaid recoveries." Access urges this Court to adopt the rationale of a case from New Mexico and determine that "regulatory deficiencies that are not material to government payment do not support a false claim action." The Department contends that Access has asserted for the first time on appeal that IDAPA chapter 16.05.07 provides a basis to apply the FCA and, therefore, failed to preserve the argument for appeal. Additionally, the Department argues that it is inappropriate to apply the FCA in this case because neither Idaho Code section 56-209h, nor IDAPA chapter 16.05.07, require proof of materiality.

While it is true that Access argues for the first time on appeal that IDAPA chapter 16.05.07 provides a basis for applying the FCA's materiality requirement, we conclude that the argument has been preserved. "A party may refine issues that they have raised below with additional legal arguments so long as the substantive issue and the party's position on that issue remain the same." *Siercke v. Siercke*, 167 Idaho 709, 715, 476 P.3d 376, 382 (2020). Below, Access argued to both the hearing officer and the district court that the FCA's materiality requirement should apply. Therefore, the substantive issue and Access's position on that issue remain the same on appeal and

14

Access has only added an additional justification supporting its argument. Because Access is merely refining its argument on this issue on appeal, we conclude Access has preserved the issue for appeal.

Even so, we conclude Access's argument is unpersuasive. Under the FCA, a person is liable only if he or she "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). The FCA requires proof that the defendant made a false statement to get a false claim paid or approved by the government. *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 668 (2008). Access argues that the FCA applies because the Department relied on IDAPA chapter 16.05.07, which it claims is Idaho's False Claims Act counterpart for Medicaid recoveries. However, Idaho does not have a False Claims Act, nor is IDAPA chapter 16.05.07 a regulatory counterpart to the FCA. The legislature declined to include a materiality requirement in Idaho Code section 56-209h(5), and approved IDAPA chapter 16.05.07 despite the absence of a materiality requirement. Accordingly, this Court declines to impose an additional element that the legislature has not adopted. We affirm the district court's conclusion affirming the hearing officer's decision declining to apply the FCA's materiality requirement in this case.

**D. The doctrine of laches does not bar the Department's administrative actions.**

Access argues that the doctrine of laches barred the department from seeking recoupment. The hearing officer rejected Access's laches argument because the Department initiated its audit and requested documents from Access well before the expiration of the five-year record retention period. Additionally, the hearing officer concluded that Access failed to demonstrate that it was prejudiced by the Department's conduct. The district court affirmed the hearing officer's decision, explaining that Access "failed to meet the third element of laches, lack of knowledge that the Department would assert its rights."

Access argues that the hearing officer's order was not supported by substantial evidence because Access provided "unrebutted testimony that it was severely prejudiced by the unreasonable length and delay of the audits." The Department contends that Access cannot maintain a laches defense because "the Department did not unreasonably delay asserting its rights, Access knew that the Department was pursuing its audits, and Access was not prejudiced by the lapse of time."

15

"The defense of laches is a creation of equity and is a specie of equitable estoppel." *Sword v. Sweet*, 140 Idaho 242, 249, 92 P.3d 492, 499 (2004). "Laches is an affirmative defense and the party asserting the defense has the burden of proof." *Sherman Storage, LLC v. Glob. Signal Acquisitions II, LLC*, 159 Idaho 331, 337, 360 P.3d 340, 346 (2015) (quoting *Thomas v. Arkoosh Produce, Inc.*, 137 Idaho 352, 359, 48 P.3d 1241, 1248 (2002)). This Court considers four elements when considering whether the defense of laches applies:

> (1) defendant's invasion of plaintiff's rights, (2) delay in asserting plaintiff's rights, the plaintiff having had notice and an opportunity to institute a suit, (3) lack of knowledge by defendant that plaintiff would assert his rights, and (4) injury or prejudice to defendant in the event relief is accorded to plaintiff or the suit is not held to be barred.

*State, Dep't of Health & Welfare ex rel. Nicklaus v. Annen*, 126 Idaho 691, 692–93, 889 P.2d 720, 721–22 (1995) (citation omitted).

The hearing officer found that Access failed to establish the third element of laches because the Department requested the documents well before the expiration of the five-year retention period, which put Access on notice that the Department was investigating certain claims for a specific timeframe. The hearing officer also relied on documentation and testimony concerning the Department's communications with Access about the audit, which constituted notice to Access that the Department was continuing to investigate.

As previously discussed, the record confirms that the Department requested billing records in advance of its recoupment demands and that it repeatedly communicated with Access to obtain additional information. The hearing officer's decision that Access failed to establish the third of element of laches applied was supported by substantial evidence in the record as a whole. As such, we do not need to address whether Access established the fourth element concerning prejudice. We affirm the district court's decision affirming the hearing officer's determination that the defense of laches did not apply in this case. Because Access has failed to establish a violation of Idaho Code section 67-5279(3), we need not address whether Access's substantial rights were violated.

**E.  Access is not entitled to attorney fees and costs on appeal.**

Access requests attorney fees and costs on appeal pursuant to Idaho Code sections 12-117 and 12-121, and Idaho Appellate Rules 35(a)(5), 40, and 41. Idaho Code sections 12-121 and 12-117 allow an award attorney fees on appeal to the prevailing party. *See* I.C. § 12-121; I.C. § 12-

117. Our decision today affirms the district court's decision in its entirety. As a result, Access is not a prevailing party and not entitled to an award of attorney fees or costs on appeal.

## V. CONCLUSION

The judgment of the district court is affirmed. The Department had legal authority to issue recoupment demands to Access. Access failed to demonstrate an entitlement to payment of those funds sought to be recouped. The FCA's materiality requirement is inapplicable to the Department's administrative action. Finally, laches did not bar the Department's administrative actions. The Department is awarded its costs on appeal pursuant to I.A.R. 40.

Chief Justice BEVAN, Justices BRODY, STEGNER and MOELLER **CONCUR**.