# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49852-2022

GRACE AT FAIRVIEW LAKES, LLC, an
Idaho limited liability company,

    Petitioner-Appellant,

v.

IDAHO DEPARTMENT OF HEALTH AND
WELFARE, an executive department of the
state government,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2023 Term

Opinion filed: September 22, 2023

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho,
Ada County. Lynn Norton, District Judge.

The decision of the district court is <u>affirmed</u>.

Davison, Copple, Copple & Copple, LLP, Boise, for Appellant. Michael E. Band
argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Dallin Creswell
argued.

---

ZAHN, Justice.

This case arises from the Idaho Department of Health and Welfare's ("the Department")
enforcement action against Grace at Fairview Lakes, LLC ("Grace"), a residential assisted living
and memory care facility. The Department cited Grace for failing to provide a safe living
environment for residents and for inadequate training in relation to COVID-19 infection control
measures. Grace requested administrative review of the enforcement action, which was affirmed
by a Department administrator. Grace then filed an administrative appeal challenging the action,
which was affirmed by a hearing officer. Grace then filed a petition for judicial review in district
court. The district court denied all the relief sought by Grace. On appeal to this Court, Grace argues

1

that the district court erred because the hearing officer's decision was not supported by substantial evidence in the record as a whole. We find no error in the district court's decision because there is substantial evidence in the record to support the hearing officer's order. We therefore affirm the district court's decision denying Grace's petition for review.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Grace operates a residential assisted living and memory care facility in Meridian, Idaho. In June 2020, during the height of the COVID-19 pandemic, twenty-six residents and three or four staff members tested positive for COVID-19. Two residents died due to complications associated with the virus. The Department received a complaint alleging that Grace had not been complying with the recommended COVID-19 infection control measures and, therefore, failed to provide a safe living environment for residents.

From August 24, 2020, to September 2, 2020, the Department conducted an investigation survey of Grace, which included requesting and reviewing documents and interviewing witnesses. After completing its investigation, on September 25, 2020, the Department sent a letter to Grace's administrator citing the facility for a "core issue deficiency" for failing to provide a safe living environment for residents; and for "non-core deficiencies" for failing to adequately train staff, failing to comply with guidance from the Centers for Disease Control and Prevention ("CDC"), and failing to report COVID-19 cases. The letter stated:

> Based on interviews and record reviews, it was determined the facility failed to provide a safe living environment for 4 of 4 sampled Residents (#2, #3, #5 and #6), who tested positive for COVID-19, and 100% of the residents at the facility when they did not implement infection control measures during the COVID-19 pandemic. Neither the facility administrator or [sic] nurse were appropriately trained to implement basic precautions to limit the introduction and spread of the virus within the facility or follow the facility's policies on infection control during the pandemic.
>
> - Staff were working when they had symptoms.
>
> - Staff were not wearing masks to prevent infection.
>
> - Staff and visitors were not properly screened for signs or symptoms of the virus.
>
> - Residents were not provided social distancing in the dining room or at activities and residents left the facility for non-medical reasons without proper screening when they returned.

The Department further determined that the core issue deficiency substantially limited Grace's capacity to provide for residents' basic safety needs. As a result, the Department issued a

2

provisional license to Grace to "remain in effect until the facility has achieved full regulatory compliance." Additionally, the Department issued a ban on new admissions to remain in effect until Grace had achieved full compliance with the Department's licensing and certification requirements. The Department required Grace to complete a "Plan of Correction" to address each of the Department's listed issues and to "correct non-core issue deficiencies within thirty (30) calendar days of the exit conference." The letter informed Grace that it may contest the provisional license or ban on admissions by filing a request for administrative review within twenty-eight days.

Grace filed a timely request for administrative review. The Department's Administrator of Licensing and Certification subsequently conducted a telephonic conference with one of Grace's administrators and counsel for Grace and the Department. On December 2, 2020, the administrator upheld the Department's enforcement action after finding sufficient evidence proved that the facility failed to provide adequate care by failing to comply with requirements for infection control under IDAPA 16.03.22.335 and failing "to implement its own facility policies and procedures to control and prevent infections for both staff and residents." The decision informed Grace of its right to appeal pursuant to IDAPA 16.05.03.

In the meantime, on October 1, 2020, Grace submitted a Plan of Correction. Between January 25 and February 4, 2021, the Department performed a follow-up onsite survey and determined that there were still both core and non-core deficiencies, including inadequately trained staff. Accordingly, the Department extended Grace's provisional license and the ban on new admissions until March 2, 2021. On April 29, 2021, the Department conducted another follow-up survey and determined that Grace was in substantial compliance, at which time it lifted the provisional license and ban on new admissions.

On December 7, 2020, Grace filed an administrative appeal of the Department's enforcement action. A hearing officer with the Fair Hearings Unit of the Idaho Attorney General's Office ("FHU") held a hearing over the course of three days in April and May 2021. The hearing officer heard testimony from Department surveyors and Grace's program supervisor, facility and regional nurses, and facility and regional administrators. Additionally, family members of two residents testified. The hearing officer also received multiple exhibits, including guidance from state and federal authorities that identified infection control measures to prevent the spread of COVID-19 in residential living facilities. Testimony established that the Department had transmitted the guidance documents to Grace and other Idaho residential living facilities prior to

the COVID-19 outbreak at Grace. Following the presentation of evidence, both parties provided post-hearing briefs to the hearing officer.

The hearing officer subsequently issued a preliminary order affirming the Department's enforcement action. The hearing officer determined that the Department had proved, by a preponderance of the evidence, that Grace was adequately aware of COVID-19 protocols it should follow, that staff worked when they had symptoms of COVID-19, that staff failed to wear masks at work, that staff and visitors were not screened for symptoms of COVID-19, that the facility did not institute social distancing for the residents, and that the facility allowed residents to leave the facility without proper screening upon return. The hearing officer determined that the Department's ban on admissions was within the scope of its authority because the record demonstrated that Grace had failed to take sufficient steps to ensure that staff were adequately trained to prevent the spread of COVID-19. Grace did not request that the Idaho Board of Health and Welfare review the preliminary order and, as a result, the preliminary order became a final order.

Grace next timely filed a petition for judicial review in the district court. Neither party requested oral argument; therefore, the matter was submitted to the district court on the briefs. Grace argued that the hearing officer failed to properly weigh the evidence presented by both parties, that the hearing officer erred in concluding that the Department met its burden of proof to establish a core violation, and that the hearing officer erred in upholding the admissions ban because the evidence did not establish that Grace inadequately trained its employees or that any training deficiencies existed at the time of the administrative hearing. The district court affirmed the preliminary order after concluding that there had been no error in the hearing officer's weighing of the evidence and that substantial evidence in the record supported the hearing officer's order. Grace timely appealed the district court's decision.

## II.    ISSUES ON APPEAL

1. Whether the district court erred when it concluded that there was substantial evidence to support the hearing officer's conclusion that Grace failed to provide a safe living environment for its residents.

2. Whether the district court erred when it concluded that there was substantial evidence to support the hearing officer's conclusion that the Department had authority to implement a ban on new admissions pursuant to IDAPA 16.03.22.920.01.a.

3. Whether either party is entitled to an award of attorney fees pursuant to Idaho Code section 12-117.

4

### III. STANDARDS OF REVIEW

When reviewing an appeal from a district court's decision acting in its appellate capacity under the Idaho Administrative Procedure Act ("APA"), this Court reviews "the decision of the district court to determine whether it correctly decided the issues presented to it." *Rangen, Inc. v. Idaho Dep't of Water Res.*, 160 Idaho 251, 255, 371 P.3d 305, 309 (2016) (quoting *Clear Springs Foods v. Spackman*, 150 Idaho 790, 797, 252 P.3d 71, 78 (2011)). This Court reviews the agency record independent of the district court's decision and "defers to the agency's findings of fact unless they are clearly erroneous, and the agency's factual determinations are binding on the reviewing court, even when there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record." *Id.* (internal quotation marks omitted) (citation omitted). "A review of an agency decision is limited to the record on appeal, and this Court may not substitute its judgment for that of the hearing officer on questions of fact." *Idaho County v. Idaho Dep't of Health & Welfare*, 128 Idaho 846, 848, 920 P.2d 62, 64 (1996) (citing *Viveros v. Idaho Dep't. of Health & Welfare*, 126 Idaho 714, 717, 889 P.2d 1104, 1107 (1995)).

When reviewing a petition for judicial review, the district court must affirm the Department's action, unless the court determines that the agency's findings, inferences, conclusions or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3); *Access Behav. Health v. Dep't of Health & Welfare*, 170 Idaho 874, 880, 517 P.3d 803, 809 (2022). "Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Doe I*, 164 Idaho 883, 888, 436 P.3d 1232, 1237 (2019) (quotation marks omitted) (quoting *Doe v. Doe*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010)). Regardless of whether the Department's action meets the standard set forth in Idaho Code section 67-5279(3), the district court must affirm the Department's action unless the "substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4); *Access Behav. Health*, 170 Idaho at 880, 517 P.3d at 809. "It is the burden of the party contesting the Department's decision to show how the Department erred in a manner specified under [Idaho Code section] 67-5279, and to establish that a substantial right has been prejudiced." *Access Behav. Health*, 170 Idaho at 880, 517 P.3d at 809.

## IV. ANALYSIS

Grace's appeal challenges the Department's enforcement action, which cited Grace for a "core issue deficiency" for failing to provide "a safe living environment." Before we address the merits of Grace's argument, it is helpful to understand the statutory and regulatory provisions at play.

As an Idaho residential care facility, Grace was subject to Idaho's Residential Care or Assisted Living Act ("Act"). I.C. §§ 39-3306, -3340, -3345. The Act charges the Idaho Board of Health and Welfare with adopting and enforcing rules necessary to "protect the health, safety and individual rights of residents in residential care or assisted living facilities." I.C. § 39-3305(1). The Board's rules require a facility administrator to ensure "that policies and procedures are developed and implemented to ensure that all residents are free from inadequate care." IDAPA 16.03.22.520.[1]

The Act requires the Department to investigate complaints alleging that a facility is in violation of the Act or applicable rules, regulations, and standards. I.C. § 39-3356(2). The Department may pursue an enforcement action if the Department finds a deficiency within the facility. I.C. § 39-3357; IDAPA 16.03.22.900. A deficiency occurs when the Department determines there has been "noncompliance with a specific rule[.]" IDAPA 16.03.22.010.22.

The Board's rules identify two types of deficiencies: core issues and non-core issues. *See* IDAPA 16.03.22.010.20 and 16.03.22.011.19. A core issue deficiency can exist in several situations, including when a deficiency results in inadequate care. IDAPA 16.03.22.010.20. The Board's rules define "inadequate care" to include the facility's failure to provide "a safe living environment." IDAPA 16.03.22.011.05. A non-core issue deficiency is "[a]ny finding of deficient practice that is not a core issue." IDAPA 16.03.22.011.19.

If the Department finds a deficiency, the Act requires the Department to provide one or more of the remedies identified in Idaho Code section 39-3358, depending on the nature of the deficiency. I.C. § 39-3357. The available remedies include prohibiting the facility from admitting residents. I.C. § 39-3358(1)(a). The Department may issue a provisional license "when a facility has one (1) or more core issues, when non-core issues have not been corrected, have become repeat deficiencies, or an acceptable plan of correction is not submitted as described in these rules." IDAPA 16.03.22.935. The designation of a deficiency as a core issue or a non-core issue has repercussions for the facility, including the type of remedies employed, whether the facility has to

---

[1] All references to IDAPA 16.03.22 are to the 2020 C1 version unless otherwise indicated.

submit a written plan of correction, and how long the facility has to correct the deficiency. IDAPA 16.03.22.130.07–.09.

Since 2006, the Board's rules have required facilities to implement infection control measures contained in CDC guidance. IDAPA 16.03.22.335. At the time of the Department's enforcement action, the pertinent provisions of IDAPA 16.03.22.335 provided that:

> The administrator is responsible for ensuring that policies and procedures consistent with recognized standards that control and prevent infections for both staff and residents are developed and implemented throughout the facility, to include:
>
> **01.** **Staff with an Infectious Disease**. Staff with an infectious disease must not work until the infectious stage no longer exists or must be reassigned to a work area where contact with others is not expected and likelihood of transmission of infection is absent.
>
> **02.** **Standard Precautions**. Standard precautions must be used in the care of residents to prevent transmission of infectious disease according to the Centers for Disease Control and Prevention (CDC) guidelines. These guidelines may be accessed on the CDC website at http://www.cdc.gov/hai/.

IDAPA 16.03.22.335.01–.02.

With this framework in mind, we now turn to Grace's arguments on appeal.

**A. The district court did not err when it concluded that there was substantial evidence that Grace's failure to properly implement CDC guidance constituted a failure to provide a safe living environment.**

On appeal, Grace argues that the district court erred in affirming the hearing officer because the hearing officer's preliminary order was not supported by substantial evidence. Grace does not challenge the evidence supporting the hearing officer's factual findings that its employees failed to properly implement infectious disease control measures. Instead, Grace argues that the Department failed to establish that its failure to implement these measures created an unsafe living environment.

Grace correctly notes that it was the Department's burden to establish, by a preponderance of the evidence, a core issue deficiency. IDAPA 16.05.03.133–.134 (2020 C1). "A 'preponderance of the evidence' is evidence that, when weighed with that opposed to it, has more convincing force and from which results a greater probability of truth." *Harris v. Elec. Wholesale*, 141 Idaho 1, 3, 105 P.3d 267, 269 (2004) (quoting *Cook v. W. Field Seeds, Inc.*, 91 Idaho 675, 681, 429 P.2d 407, 413 (1967)).

Grace maintains that in order to meet its burden to establish an unsafe living environment, the Department had to either: (1) prove that the failure to implement infection control measures actually caused residents to become infected with COVID-19; or (2) prove "the objective effectiveness" of the infection control measures, i.e., that the measures actually make the living environment safer for residents. Grace contends that the Department failed to put forth evidence establishing either premise and, therefore, the Department failed to establish a core issue deficiency.

In response, the Department argues that Grace's failure to comply with CDC guidance constituted a violation of IDAPA 16.03.22.335.02, which required Grace to implement standard infectious disease precautions according to CDC guidance. The Department contends that establishing a violation of IDAPA 16.03.22.335 also established that Grace failed to provide a safe living environment for its residents.

The district court affirmed the hearing officer's decision after concluding that the evidence was undisputed that COVID-19 was a communicable virus known to cause harm to humans during the relevant timeframe. The district court similarly concluded that the evidence was undisputed that there was a recognized need to control the spread of the virus, especially among vulnerable populations, like the elderly. The district court concluded there was substantial evidence in the record to support the hearing officer's conclusion that the Department proved by a preponderance of the evidence that Grace's failure to follow CDC guidance constituted a failure to provide a safe living environment for residents.

Our review of the agency record confirms the district court's conclusion. Grace has not challenged the hearing officer's findings that it failed to implement the infection control measures contained in CDC guidance. Therefore, we are only reviewing the record to determine whether there is substantial evidence to support the hearing officer's conclusion that the failure to implement those infectious disease controls constituted a failure to provide a safe living environment. "Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Doe I*, 164 Idaho at 888, 436 P.3d at 1237 (quotation marks omitted) (quoting *Doe*, 150 Idaho at 49, 244 P.3d at 193). The agency record contains sufficient evidence that could lead a reasonable person to conclude that the failure to properly implement the infectious disease controls identified in CDC guidance created an unsafe living environment. Specifically, guidance from the CDC, the Centers for Medicare and Medicaid

8

Services ("CMS"), and the Department advised Grace that failure to follow the CDC's infectious disease protocols resulted in an increased likelihood of serious illness or death for the elderly residents living at assisted living facilities, like Grace.

The record is replete with documentation and information that the Department transmitted to Grace (and other assisted living facilities) concerning the danger that COVID-19 presented to the elderly and the need to implement infection control measures to prevent the spread of COVID-19 to elderly residents of assisted living facilities. In lieu of reciting every exhibit relevant to this point, we will cite several examples of the information conveyed to Grace concerning the dangers that COVID-19 presented to its residents and the need to implement infection control measures to prevent the spread of the virus within the facility.

A March 2020 "Special Edition" of the Department's "Residential Assisted Living Facilities Program Newsletter" reminded facilities that IDAPA rules required each facility to develop and implement policies and procedures consistent with CDC guidance. It also stated:

> Any infectious disease can cause serious complications for those who are over the age of 65, especially those with chronic illnesses such as heart disease or asthma.

The newsletter advised that "standard precautions are important, as the best way to prevent the spread of illness is to avoid exposure." The newsletter went on to discuss use of personal protective equipment ("PPE"), handwashing, and separating infected individuals from healthy individuals.

An April 10, 2020, a Department document entitled "Guidance for Infection Control and Prevention of Coronavirus Disease 2019 (COVID-19) in Residential Assisted Living Facilities" advised that:

> Older adults with underlying chronic medical conditions are at the highest risk of having serious health consequences associated with coronavirus disease 2019 (COVID-19). Residential assisted living facilities in Idaho should be taking steps to implement infection control and prevention strategies to minimize the introduction and spread of COVID-19 within their facilities.

The Department's guidance document went on to advise facilities to implement the CMS guidance regarding visitors and the CDC guidance regarding screening, PPE, and staffing.

The record also contains a May 29, 2020, CDC guidance document entitled "Considerations for Preventing Spread of COVID-19 in Assisted Living Facilities," which provides:

> Given their congregate nature and population served, assisted living facilities (ALFs) are at high risk for SARS-CoV-2 spreading among their residents. If infected with SARS-CoV-2, the virus that causes COVID-19, assisted living

residents—often older adults with underlying medical conditions—are at increased risk for severe illness. CDC is aware of confirmed cases of COVID-19 among residents of ALFs in multiple states.

. . . .

When relaxing any restrictions, ALFs must remain vigilant for COVID-19 among residents and personnel in order to prevent spread and protect residents and personnel from severe infections, hospitalizations, and death.

The record also contains weekly reports from the Department summarizing statistical data concerning the number of long-term care facilities with COVID-19 cases, including the number of COVID-19-related deaths. For example, the Department's June 5, 2020, report detailed 25 outbreaks, with 289 total cases. The report further indicated there were fifty-two COVID-19-related deaths associated with nine long-term care facilities.

Grace did not dispute that it received this documentation, nor did it dispute that COVID-19 presented a serious public health threat, that it was transmitted between persons, that elderly persons in congregate living situations were the most vulnerable to the disease, that the elderly were at a higher risk of serious health complications or death from the disease, and that implementation of infection control measures was vital to limiting the spread of COVID-19 and preventing infection among the elderly. The record also reveals that Grace recognized this risk because it adopted COVID-19 guidelines for its facilities that adopted the CDC guidance.

Grace's argument before the hearing officer, which it reasserts on appeal, is essentially that, in order to establish a core violation for inadequate care due to the failure to provide a safe living environment, the Department was required to prove the truth of the CDC's guidance—that implementing the CDC's recommendations would prevent its residents from contracting COVID-19. We are unpersuaded by this argument because nothing in the statute or the administrative rules requires the Department to prove the efficacy of the CDC's infection control measures.

As previously mentioned, since 2006, the Department's administrative rules required all facilities to ensure that policies and procedures to control and prevent the spread of infectious diseases were developed and implemented throughout the facility. IDAPA 16.03.22.335. The rules specifically require facilities to develop and implement standard precautions according to CDC guidelines. *Id.* The Department submitted evidence, which Grace does not challenge on appeal, establishing that Grace failed to properly implement CDC guidelines concerning infection control measures to control and prevent the spread of COVID-19 in assisted living facilities. *Id.* The documentation admitted before the hearing officer established that the CDC and other state and

federal agencies advised Grace (and other assisted living facilities) that the disease presented a serious health risk to the elderly, especially to those living in congregate living environments. The Department's weekly bulletins distributed during the pandemic advised Grace that elderly residents in Idaho assisted living facilities were dying from COVID-19. The Department's testimony and documentation constituted evidence that a reasonable person could rely on to conclude that the failure to implement the recommended infectious disease controls for COVID-19 created an unsafe living environment for Grace's residents.

At oral argument, Grace asserted that this Court should not rely on the exhibits in the agency record when analyzing its claims because the hearing officer did not quote from those exhibits in her preliminary order. While that is true, the hearing officer did state that her decision was based on the evidence in the record. And she specifically identified the witnesses whose testimony was received and the exhibits that were admitted into the record. This is sufficient to establish that the hearing officer's conclusions were based on the evidence received at the hearing. "[T]he trial judge is not required to recite every piece of evidence and either adopt it or reject it, or to sort through and discuss the testimony of each witness." *In re Doe*, 157 Idaho 765, 770, 339 P.3d 1169, 1174 (2014) (quoting *Browning v. Ringel*, 134 Idaho 6, 14, 995 P.2d 351, 359 (2000)).

There was substantial evidence in the agency record to support the hearing officer's conclusion that Grace's failure to properly implement infectious disease controls created an unsafe living environment. We therefore affirm the district court's decision on this point.

**B. The district court did not err when it affirmed the hearing officer's conclusion that the Department had authority to implement a ban on new admissions until Grace had achieved compliance.**

As part of its September 25, 2020, enforcement action, the Department implemented a ban on the admission of new patients pursuant to IDAPA 16.03.22.920.01.a because staff had been inadequately trained for infection control. The Department explained:

> The core deficiency demonstrates the facility administrator and nurse was [sic] not sufficiently trained to implement the facility policies to prevent the introduction and spread of COVID-19 within the facility. They did not ensure staff wore masks and did not work when sick, they did not ensure residents were socially isolated, and they did not ensure adequate screening of persons entering the facility who could bring the infection in.

The Department stated that the ban would remain in effect until the Department determined that the facility had achieved full compliance with licensing and certification requirements. The ban was subsequently lifted on April 29, 2021.

The hearing officer determined that the Department operated within its legal authority when it implemented the ban on admissions. The hearing officer considered the evidence in the record and determined that the Department had met its burden of proving Grace failed to train staff on COVID-19 protocols. In reaching this conclusion, the hearing officer relied on the Department's investigation, including its interviews of employees, former employees, and residents' family members to make this finding. The hearing officer rejected Grace's argument that the deficiencies had been resolved by the time the Department issued the ban on admissions. In doing so, the hearing officer relied on the information provided during the Department's initial survey and its follow-up survey, which identified continuing issues with inadequate training.

The district court concluded that the hearing officer reasonably inferred that the deficiencies proved "an overall failure to train Facility staff about proper COVID protocols and lack of compliance with IDAPA 16.03.22.335." As such, the district court determined that the hearing officer's preliminary order was supported by sufficient evidence and affirmed the hearing officer's decision that the Department had the authority to implement a ban on new admissions until Grace achieved compliance with training requirements.

On appeal, Grace argues that the Department did not have the authority to implement a ban on admissions because the only basis for implementing the ban was the failure to properly train staff on COVID-19 infection control measures, and the Department failed to establish that Grace failed to adequately train staff in that regard. Instead, Grace asserts that the hearing officer improperly inferred a lack of training. Additionally, Grace argues that there was no evidence of any training deficiencies at the time of the hearing.

The Department contends that the hearing officer properly inferred that Grace's deficiencies established that Grace had failed to train staff about COVID-19 protocols. Further, the Department argues that substantial evidence supported the hearing officer's determination that Grace had failed to adequately train staff at the time of the hearing.

The Department may issue a ban on admissions when "[t]he facility is inadequately staffed or the staff is inadequately trained to handle more residents[.]" IDAPA 16.03.22.920.01.a. Additionally, "[l]imits on admissions to the facility remain in effect until the Department determines the facility has achieved full compliance with requirements . . . ." IDAPA 16.03.22.920.02. The Department determines compliance by conducting "follow-up surveys to ascertain corrections to issues are made according to the time frames established in the plan of

12

correction for core issues and within thirty (30) days for non-core issues." IDAPA 16.03.22.130.10.

In upholding the Department's ban on admissions, the hearing officer relied on evidence of survey interviews of staff and outside parties and found there were "22 individuals who expressed concerns and reported [Grace] was not following Covid-19 protocols." The hearing officer subsequently inferred that this evidence demonstrated that Grace did "not take sufficient steps to ensure that staff were adequately trained to prevent the spread of Covid-19[.]"

We affirm the district court's determination affirming the hearing officer on this issue. The record includes evidence that multiple staff members were not required to wear masks, were not screened when entering the facility, worked while they were ill, and did not implement or enforce social distancing with residents. This Court will not substitute its judgment for that of the fact finder as to the credibility of witnesses, the weight of evidence, and the reasonable inferences to be drawn from the evidence. *Liberty Bankers Life Ins. Co. v. Witherspoon, Kelley, Davenport & Toole, P.S.*, 159 Idaho 679, 686, 365 P.3d 1033, 1040 (2016). A reasonable factfinder could rely on this evidence to conclude that staff had not been properly trained on the CDC guidance. Therefore, the hearing officer's conclusion that Grace failed to properly train its staff was supported by substantial evidence.

We are unpersuaded by Grace's argument that the deficiencies had been resolved by the time the ban was issued. The Department issued the ban on admissions in its initial enforcement action after completing the survey for the time period covering August 24 to September 2, 2020. Although the Department surveyed Grace for a discrete time period that ended on September 2, 2020, that does not prevent the hearing officer from inferring that the failure to train continued after the completion of the survey. Grace's argument, taken to its logical conclusion, would make it practically impossible to establish a violation because the Department would have to conduct an investigation the day before the hearing. The Department based its enforcement action on violations uncovered during its survey. The administrative rules permitted the Department to issue a provisional license when Grace was cited with one or more core issue deficiencies, or when non-core issues had not been corrected. IDAPA 16.03.22.935. The rule did not require the deficiency to still exist on the date the provisional license was issued. *Id.*

Further, in determining that the Department had met its burden of proof on the issue of inadequate training, the hearing officer considered the results of the Department's follow-up

survey between January 25 and February 4, 2021, which concluded that Grace's training remained inadequate. IDAPA provides that, once a deficiency has been identified, the Department shall conduct "follow-up surveys to ascertain corrections to issues are made according to the time frames established in the plan of correction for core issues and within thirty (30) days for non-core issues." IDAPA 16.03.22.130.10. A reasonable mind could rely on the results of the follow-up survey to determine that Grace's training was inadequate in September 2020 because it remained inadequate at the time of the follow-up survey between January 25 and February 4, 2021.

To sum up, we find no error in the district court's decision affirming the hearing officer's conclusion that Grace's training concerning infection control measures was inadequate, which in turn provided the Department with the legal authority to implement a ban on new admissions until Grace became fully compliant with training requirements.

## C. The Department is entitled to attorney fees pursuant to Idaho Code section 12-117.

Grace and the Department each request attorney fees on appeal pursuant to Idaho Code section 12-117(1). Idaho Code section 12-117(1) allows the award of attorney fees "in any proceeding involving as adverse parties a state agency or a political subdivision and a person" when the Court "finds that the nonprevailing party acted without a reasonable basis in fact or law."

Because we affirm the district court's decision, Grace is not the prevailing party on appeal and is therefore not entitled to an award of attorney fees. The Department is the prevailing party and therefore we consider whether it is entitled to an award of fees under section 12-117. The Department argues that it is entitled to attorney fees because Grace's arguments on appeal lacked a reasonable basis in fact or law.

When considering a request for attorney fees under this section, this Court's decisions concerning attorney fee requests under Idaho Code section 12-121 are instructive because both statutes permit the award of attorney fees when a case has been pursued frivolously, unreasonably or without foundation. *Galvin v. City of Middleton*, 164 Idaho 642, 647, 434 P.3d 817, 822 (2019). This Court has stated that an appeal is "pursued frivolously, unreasonably, and without foundation . . . when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the district court incorrectly applied well-established law." *Snider v. Arnold*, 153 Idaho 641, 645–46, 289 P.3d 43, 47–48 (2012).

Here, Grace's only argument on appeal was that the hearing officer's order was not supported by substantial and competent evidence. And in that regard, Grace did not challenge the

evidence supporting the hearing officer's findings that it failed to properly implement infection control measures. Instead, it argues there was no substantial evidence in the record to prove that the failure to properly implement those measures created an unsafe living environment for its residents. It also contends that there was no substantial evidence establishing that it failed to properly train its employees.

However, the record is replete with written documentation that the Department provided to Grace concerning infection control measures, including the CDC guidelines, which indicated that the failure to properly implement the CDC's guidelines would allow for the spread of COVID-19 and that the disease presented a significant risk to the health and lives of the elderly, particularly those residing in congregate living facilities such as Grace's. The record was also replete with evidence of Grace's employees not following the CDC's guidelines on infection control measures, which Grace does not contest on appeal.

In sum, Grace has failed to establish that the hearing officer erred in relying on the aforementioned evidence. Grace's argument on appeal essentially is that the Department should have presented more evidence, which amounts to a request for this Court to reweigh the evidence and deem it lacking. Therefore, the Department, as the prevailing party, is entitled to an award of attorney fees under Idaho Code section 12-117(1). The Department is also entitled to its costs as a matter of right. I.A.R. 40(a).

## V.    CONCLUSION

For the reasons stated above, we affirm the district court's decision affirming the hearing officer's determination that sufficient evidence supported the Department's enforcement action against Grace. The Department is awarded its attorney fees and costs on appeal.

Chief Justice BEVAN, and Justices BRODY, STEGNER, and MOELLER CONCUR.